# UNITED STATES *v.* CITROEN.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 30.   Argued November 1, 1911.—Decided February 19, 1912.

In order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself in the condition in which it is imported.

A prescribed rate of duty cannot be escaped by disguise or artifice; but if the article imported is not the article described as dutiable at a specified rate, it does not become dutiable under the description because it has been manufactured for the purpose of being imported at a lower rate.

The court is not concerned with reasons for a distinction in the tariff act,—it is enough that Congress made it.

Pearls, unset and unstrung, are dutiable under par. 436 of the tariff act of 1897 at ten per centum and not under par. 434 at sixty per centum, because capable of, or intended for, being strung as a necklace.

The fact that a pearl has been drilled—as is the case with more·than seventy-five per cent. of all large pearls when they come from the wholesale dealers—does not take it out of par. 436 and make it dutiable under par. 434 at sixty per centum.

Congress will not be presumed in framing a tariff act to have contemplated a radical·departure from the policy of former tariff legislation when it will also be necessary to presume that Congress in doing so also disregarded facts of the trade.

After reviewing. provisions of former tariff acts and prior decisions in regard to pearls and the duties to be levied upon them, *held*, that pearls, not strung or set, although suitable for being strung as a necklace are not to be classed by similitude under par. 434 and subjected to the higher duty of sixty per centum.

Where a tariff act, as that of 1897, provides for pearls set or strung, and for pearls not strung or set, it will not be presumed that Congress intended to leave an unenumerated class of pearls to be classed by similitude.

166 Fed. Rep. 693, 92 C. C. A. 365, affirmed.

THE facts, which involve the construction of paragraphs 434 and 436 of the tariff act of 1897 as applied to pearls, are stated in the opinion.

*Mr. Assistant to the Attorney General Fowler* for the United States:

The Circuit Court of Appeals improperly adopted as the facts the findings of the Board of General Appraisers. *Apgar* v. *United States*, 78 Fed. Rep. 332, 334.

The new evidence introduced in the Circuit Court was, in substance, that the pearls were assembled into a complete necklace and were a necklace, and were so worn by the purchaser, before importation.

Had this evidence been before the board, the board would, according to its own declaration, have overruled the protest and affirmed the collector's classification.

The decision of the Circuit Court of Appeals conflicts with the well-recognized rule laid down in other cases for the assessment of duties upon pearls. *Tiffany* v. *United States*, 103 Fed. Rep. 619.

A perforated pearl is not in its natural state, although the cost of perforation is but trifling. The amount of expense cannot be considered in determining whether the pearl has been changed from its natural state. *Seeberger* v. *Farwell*, 139 U. S. 608; *Tiffany* v. *United States*, 105 Fed. Rep. 766; *Tiffany* v. *United States*, 112 Fed. Rep. 672; *Neresheimer* v. *United States*, 131 Fed. Rep. 977.

In the various cases relating to the assessment of duties upon drilled pearls, three theories have been advanced: First. The one adopted by Judge Coxe, in the second *Tiffany Case*, 105 Fed. Rep. 766, holding them assessable as strung pearls under the similitude clause; second, the rule adopted by the Circuit Court of Appeals in the same *Tiffany Case* and approved in the *Neresheimer Case*, *supra*, and applied in the present case, that such pearls must be classified under the similitude clause as belonging to either par. 434 or 436; and third, the method suggested, but not followed, by the Circuit Court of Appeals in the present case, that pars. 434 and 436 embrace all kinds of pearls, and the similitude clause has no application.

That this last method is not the correct one, is clearly shown by Judge Lacombe in the first *Tiffany Case*. See provisions relating to pearls in the previous tariff acts. Paragraphs 452 and 453 of the act of October 1, 1890 (26 Stat. 600); pars. 337 and 338 of the act of August 28, 1894, c. 349, 28 Stat. 534.

The finding of fact by Judge Lacombe is not only abundantly sustained by the evidence, but when the evidence is taken as a whole no other inference can be drawn therefrom.

Years were spent in the collection of these pearls. They were assorted and selected as to size, quality, etc., and kept intact for years, and became well known in the trade as a collection for a valuable necklace.

When an article is separated into its component parts, which parts are imported separately, they are assessable

for duty as if the article were imported as a whole. *United States* v. *Schoverling*, 146 U. S. 76; *United States* v. *Irwin*, 78 Fed. Rep. 799; *Isaacs* v. *Jonas*, 148 U. S. 648; *Read* v. *Certain Merchandise*, 103 Fed. Rep. 197; *McMillan Co.* v. *United States*, 116 Fed. Rep. 1018.

The right of an importer to so manufacture his goods as to reduce the rate of duty extends only to its manufacture, and does not permit him to change its character after manufacture in order to avoid a higher rate of duty. *Merritt* v. *Welsh*, 104 U. S. 694, 700; *Seeberger* v. *Farwell*, 139 U. S. 608; *Vantine & Co.* v. *United States*, 155 Fed. Rep. 149.

The court will consider the intent of an importer to defraud the revenue, and also whether or not a certain element or ingredient of the imported article is a trifling or substantial portion thereof, unless such consideration is prohibited by the language of the statute. *Falk* v. *Robertson*, 137 U. S. 225; *Seeberger* v. *Schlesinger*, 152 U. S. 581, 587.

The pearls in question were jewelry or parts thereof, finished or unfinished, and therefore were properly classified under par. 434.


*Mr. W. Wickham Smith*, with whom *Mr. John K. Maxwell* was on the brief, for respondent:

The Circuit Court of Appeals did not pursue any improper method with regard to the findings of the Board of General Appraisers.

The findings of the board should always be adopted by tribunals of review except where they are without evidence to support them, where they are against the weight of evidence, or where they have been overborne by new testimony taken in the Circuit Court. *Gabriel & Schall* v. *United States*, 123 Fed. Rep. 296; *White* v. *United States*, 72 Fed. Rep. 251; *In re Van Blankensteyn*, 56 Fed. Rep. 474; *In re Kursheedt Mfg. Co.*, 49 Fed Rep. 633; *In re White*,

53 Fed. Rep. 787; *Marine* v. *Lyon*, 65 Fed. Rep. 992; *In re Bing*, 66 Fed. Rep. 727; *Mexican Onyx Co.* v. *United States*, 66 Fed. Rep. 732; *Belcher* v. *United States*, 91 Fed. Rep. 975; *Myers* v. *United States*, 110 Fed Rep. 940; *Leerburger* v. *United States*, 113 Fed. Rep. 976; *United States* v. *Jackson*, 113 Fed. Rep. 1000; *United States* v. *Riebe*, 1 Customs App. 19.

As to the new evidence taken in the Circuit Court, one of the witnesses did not contradict the testimony taken before the board, and if he had, one witness's testimony could not be allowed to upset a finding of the board made on the testimony of a number of witnesses. *Page* v. *United States*, 113 Fed. Rep. 1006; *Bromley* v. *United States*, 154 Fed. Rep. 399.

There is nothing in the evidence of the purchaser to justify the assertion made by the Government that the pearls "were a necklace" and "were delivered to her as a necklace" at Newport.

If the decision of the Circuit Court of Appeals conflicts with other decisions in pearl cases, that constitutes no reason for its reversal.

As to the so-called finding of facts by Judge Lacombe, there was ample testimony to support it.

The Government's argument as to an article separated into its component parts (which parts are imported separately), as well as the authorities cited thereunder, are wholly irrelevant to the point involved in this controversy. *United States* v. *Irwin*, 78 Fed. Rep. 799; *Isaacs* v. *Jonas*, 148 U. S. 648, do not apply to this case.

The contention of the Government, that an importer has no right to change the character of goods after manufacture in order to avoid a higher rate of duty, is not only irrelevant, but unsound.

Every importer has a right to have his goods assessed for duty at the appropriate rate as and what they are

when they come into the port and before the customs officers. *Seeberger* v. *Farwell,* 139 U. S. 608; *Worthington* v. *Robbins,* 139 U. S. 337; *Merritt* v. *Welsh,* 104 U. S. 694; *United States* v. *Wotton,* 53 Fed. Rep. 344; *Johnson* v. *United States,* 123 Fed. Rep. 997; *Godwin* v. *United States,* 66 Fed. Rep. 739; *Paturel* v. *Robertson,* 41 Fed. Rep. 329; *Hunter* v. *United States,* 143 Fed. Rep. 914; *Stone & Downer* v. *United States,* 147 Fed. Rep. 603, 605; *Mautner* v. *United States,* 84 Fed. Rep. 155; *In re Blumenthal,* 51 Fed. Rep. 76; *United States* v. *Levitt,* 26 Fed. Cas. 919; *In re Schoverling,* 45 Fed. Rep. 349; aff'd in *United States* v. *Schoverling,* 146 U. S. 76.

The pearls could certainly not be held dutiable as jewelry or parts thereof and assessed accordingly under par. 434 at 60 per cent.

The Government's claim is an unjust one.

In all cases of doubt as to the meaning of a revenue statute, the decision should be in favor of the importer who has to pay the tax, and there never was a case more strongly calling for the application of that rule than the case at bar. *United States* v. *Wigglesworth,* 2 Story, 369; *Rice* v. *United States,* 53 Fed. Rep. 910; *Hartranft* v. *Wiegman,* 121 U. S. 609; *Mathewson* v. *United States,* 71 Fed. Rep. 394; *United States* v. *Adams,* 54 Fed. Rep. 147; *Adams* v. *Bancroft,* 3 Sumner, 384; *McCoy* v. *Hedden,* 38 Fed Rep. 89; *American Net & Twine Co.* v. *Worthington,* 141 U. S. 468; *Hempstead* v. *Thomas,* 122 Fed. Rep. 538; *Hayes* v. *United States,* 150 Fed. Rep. 63, 66; *United States* v. *Merck,* 91 Fed. Rep. 639; *Franklin Sugar Refining Co.* v. *United States,* 142 Fed. Rep. 376, 382; *Powers* v. *Barney,* 5 Blatchf. 202; *S. C.,* 19 Fed. Cas. 1234; *United States* v. *Davis,* 54 Fed. Rep. 147; *United States* v. *Michelin Tire Co.,* 1 Customs App. 518; *United States* v. *Hatters' Fur Exchange,* 1 Customs App. 198; *United States* v. *Matagrin,* 1 Customs App. 309, 312; *Woolworth* v. *United States,* 1 Customs App. 120.

MR. JUSTICE HUGHES delivered the opinion of the court.

Bernard Citroen, on June 11, 1906, imported into the United States thirty-seven drilled pearls—unset and unstrung—divided into five lots, separately inclosed. The collector classified them by similitude "as pearls set or strung, or jewelry," dutiable at sixty per cent. ad valorem under par. 434 of the tariff act of 1897. 30 Stat. 151, p. 192. The Board of General Appraisers sustained the importer's protest, holding the pearls to be dutiable by similitude at ten per cent. under par. 436. The Circuit Court, on additional testimony, reversed this ruling and affirmed that of the collector, and this decision was, in turn, reversed by the Circuit Court of Appeals, which held that the board was right. 92 C. C. A. 365; 166 Fed. Rep. 693. The case comes here on certiorari.

The paragraphs of the act of 1897 (30 Stat., p. 192), which are in question, read as follows:

"434. Articles commonly known as jewelry, and parts thereof, finished or unfinished, not specially provided for in this Act, including precious stones set, pearls set or strung, and cameos in frames, sixty per centum ad valorem.

"436. Pearls in their natural state, not strung or set, ten per centum ad valorem."

The pearls had been purchased by the importer's brother and had been offered for sale, collectively and in lots, in Paris, London and Berlin, and to show that the collection was a desirable one for a necklace they had been strung from time to time on a silk cord. It appeared that Mrs. Leeds, the present owner, had seen the pearls in Paris, both loose and on a string. As she testified they were brought to her hotel "both on the string and off the string; it was strung up at odd times; then it was taken apart and other pearls were put in and others taken out, so it

was strung several times." She was permitted to wear the pearls as a necklace; and finally bought them, it being agreed that they should be delivered to her in this country. They were so delivered in the condition in which they were imported, without string or clasp, and to these the purchaser subsequently added six pearls and formed the necklace she desired.

With respect to the character of the imported collection the Board of General Appraisers found: "Pearls of greater dimensions than the average are comparatively rare; hence it frequently requires several years' search in order to secure a sufficient number to form a necklace, all accurately matched in the essential features of size, color and luster. Such a collection thus assembled would, no doubt, command a higher price than the aggregate value of the separate pearls. On the other hand, a sufficient number of pearls, although of large size, required to form a necklace, matched as to size, but not otherwise, except a mere regard for comparative color, could be assembled within a short time and at a price based upon the cost of each separate pearl. In order to dispose of thirty or more pearls to one purchaser, such a collection would usually be sold at a less price than the aggregate would amount to were each pearl sold separately. The evidence shows and we find that the pearls in question belong to the latter and not to the first class." T. D. 28,246; G. A. 6617. And as to these facts there is nothing in the evidence introduced in the Circuit Court which requires a different conclusion.

The questions presented are (1) whether the pearls fall directly within the description of the paragraph (434) relating to jewelry, and (2), if not, whether they are brought within this paragraph, through similitude, by virtue of § 7. 30 Stat. 205.

First. The rule is well established that "in order to produce uniformity in the imposition of duties, the duti-

able classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported." *Worthington* v. *Robbins,* 139 U. S. 337, 341; *Dwight* v. *Merritt,* 140 U. S. 213, 219; *United States* v. *Schoverling,* 146 U. S. 76, 82; *United States* v. *Irwin,* C. C. A., 2d Cir. 78 Fed. Rep. 799, 802. This, of course, does not mean that a prescribed rate of duty can be escaped by resort to disguise or artifice. When it is found that the article imported is in fact the article described in a particular paragraph of the tariff act, an effort to make it appear otherwise is simply a fraud on the revenue and cannot be permitted to succeed. *Falk* v. *Robertson,* 137 U. S. 225, 232. But when the article imported is not the article described as dutiable at a specified rate, it does not become dutiable under the description because it has been manufactured or prepared for the express purpose of being imported at a lower rate. *Merritt* v. *Welsh,* 104 U. S. 694, 704; *Seeberger* v. *Farwell,* 139 U. S. 608, 611. "So long as no deception is practiced, so long as the goods are truly invoiced and freely and honestly exposed to the officers of customs for their examination, no fraud is committed, no penalty is incurred." *Merritt* v. *Welsh, supra.* The inquiry must be—Does the article, as imported, fall within the description sought to be applied?

In the paragraph as to jewelry (434) Congress expressly defined what pearls were to be included. The paragraph reads, "including . . . pearls set or strung." It does not say pearls that can be strung, or that are assorted or matched so as to be suitable for a necklace, but pearls "set or strung." We are not concerned with the reason for the distinction; it is enough that Congress made it. Had these pearls never been strung before importation, no one would be heard to argue that they fell directly within the description of paragraph 434 because they could be strung, or had been collected for the purpose of string-

ing or of being worn as a necklace. Loose pearls—however valuable the collection—however carefully matched or desirable for a necklace—are not "pearls set or strung."

Nor can it be said that pearls, imported unstrung, are brought within the description of paragraph 434 because, at some time, or from time to time, previous to importation, they have been put on a string temporarily for purposes of display. The paragraph does not use a generic definition which could be deemed to define pearls previously strung though imported unstrung, but refers—in terms which shelter no ambiguity—to their condition when imported. It is not a case of parts of a described article, separately packed to avoid the specified duty on the article as a whole. *United States* v. *Schoverling, supra; Isaacs* v. *Jonas*, 148 U. S. 648; *United States* v. *Irwin, supra.* For here, the imported pearls, whether regarded separately or taken as a collection, are not within the description. It is idle to comment on the relative value of a string to hold the pearls, for this is immaterial. The statute has furnished the test and we are not at liberty to make another.

Second. Although the pearls do not fall directly within paragraph 434, the question remains whether they are brought within it by similitude. The similitude clause (§ 7) applies to articles not enumerated in the tariff act, and hence it governs the rate in this case only if it be found that the pearls are excluded from the description of paragraph 436, which enumerates "pearls in their natural state, not strung or set." May it fairly be said that in these two classes of pearls—those "set or strung" and those "in their natural state, not strung or set"—Congress intended to describe all pearls, or is there a sort of pearls, for example, those drilled and matched so as to be suitable for a necklace, which must be said to have been left unenumerated?

In the customs act of 1816 (3 Stat. 310) a duty of seven

and a half per cent. ad valorem was laid on "precious stones and pearls of all kinds, set or not set." The act of 1842 (5 Stat. 548, 555) made the duty seven per cent. "on gems, pearls, or precious stones." That of 1846 (9 Stat. 42, 45, 48) fixed the rate at thirty per cent. for "diamonds, gems, pearls, rubies, and other precious stones, and imitations of precious stones, when set in gold, silver, or other metal," and at ten per cent. on "diamonds, gems, pearls, rubies, and other precious stones, and imitations thereof, when not set." In 1857 (11 Stat. 192) and in 1861 (12 Stat. 178, 190), the same distinction was maintained.

In the Revised Statutes (§ 2504, p. 484) we find the following: "Precious stones and jewelry.—Diamonds, cameos, mosaics, gems, pearls, rubies, and other precious stones, when not set: ten per centum ad valorem; when set in gold, silver, or other metal, or on imitations thereof, and all other jewelry: twenty-five per centum ad valorem." In 1883 (22 Stat. 488, 513, 514) the rate of duty was made twenty-five per cent for "jewelry of all kinds" and ten per cent. for "precious stones of all kinds." In 1890 (26 Stat. 600, 601) the jewelry paragraph (452), which fixed the rate at fifty per cent. embraced all articles, not elsewhere specially provided for, which were composed of precious metals or imitations thereof (including those set with pearls) and known commercially as jewelry; and the following paragraph (453) read: "Pearls, ten per centum ad valorem." By the act of 1894 (28 Stat. 509, 534) the jewelry rate was reduced to thirty-five per cent.; the paragraph as to pearls was changed so that instead of describing pearls generally it read: "Pearls, including pearls strung but not set, ten per centum ad valorem," and pearls set were placed with precious stones set, with a duty of thirty per cent.

It will thus be observed that when pearls were enumerated in the tariff acts prior to that of 1897, the enumeration

was evidently intended to be comprehensive and covered all pearls not included in the provision for jewelry. The act of 1897 placed "pearls set or strung" in the jewelry paragraph, and then provided the rate of ten per cent. for "pearls in their natural state, not strung or set."

To complete the review of the statutes, it may be added that in 1909, when new tariff legislation was under consideration, it was proposed, in the light of the decisions to which we shall presently refer, that there should be inserted in the act a clause providing that "collections of pearls selected, matched, or graded shall be dutiable as jewelry;" and the House bill so provided. H. R. Bill No. 1438, par. 447, 61st Cong., 1st sess., Cong. Rec., Vol. 44, p. 1510. Congress not only refused to make this insertion, but instead, retaining the existing rate on unstrung and unset pearls, omitted the phrase "in their natural state," and further clarified the provision by inserting the words "drilled or undrilled," so that the clause in the act of 1909 reads: "Pearls and parts thereof, drilled or undrilled, but not set or strung, ten per centum ad valorem." (36 Stat. 68.)

The difficulties that beset the construction of paragraph 436 of the act of 1897 sufficiently appear in the cases which have been brought before the courts. In 1898, Tiffany & Company imported pierced pearls described in the invoices as "pearls drilled, but not strung." They were assessed for duty at twenty per cent. as unenumerated articles, manufactured in whole or part, under § 6. The Circuit Court (103 Fed. Rep. 619) held that the phrase "pearls in their natural state" was a new phrase wholly unknown to merchants; that the words, having no commercial meaning, must be interpreted in their plain, natural sense; and that a drilled pearl was not a pearl in the natural state. It was pointed out that the selection made by Congress in the use of these words, so interpreted, seemed an unfortunate one as the effect was to

attach a higher duty to the lower article. The conclusion was that Congress had not, as presumably it intended to do, covered all kinds of pearls in the various jewelry paragraphs, but had "left a kind of pearl to be covered by one of the catch-all paragraphs," and this the court could not correct. The assessment was sustained.

On a later importation of drilled pearls this decision was followed by the collector, and the ruling was affirmed by the Circuit Court. T. D. 22,140, G. A. 4692; *Tiffany* v. *United States* (1901), 105 Fed. Rep. 766. But, while overruling the importer's protest, the court stated that the similitude clause should operate before the general clause providing for unenumerated manufactured articles and that the imported pearls bore a closer resemblance to strung pearls than to pearls in their natural state. This was in effect to hold that drilled pearls were dutiable under the jewelry paragraph at sixty per cent.

This decision was reversed by the Circuit Court of Appeals. *Tiffany* v. *United States* (1901), 50 C. C. A. (2d Cir.) 419; 112 Fed. Rep. 672. It was ruled that the pearls were not covered by either of the paragraphs 434 and 436; that the similitude clause should be applied; and that the drilled pearls more closely resembled pearls in their natural state than strung pearls and hence that the pearls in question were dutiable at ten per cent. (This was followed in T. D. 23,751, G. A. 5149.) The court, however, indicated that there would be an exception to this rule when the pearls had been so selected as to produce a collection "worth more than the aggregate values of the individual pearls composing it."

Meanwhile, Neresheimer & Company had imported two lots of drilled pearls, in March and November, 1901, respectively, one being forty-five and the other thirty-nine in number, the total value exceeding $123,000. At first they were assessed at the rate of twenty per cent.; but after the decision of the Court of Appeals in the *Tiffany*

*Case, supra,* both entries were reliquidated and the articles were assessed by the collector as "pearls strung" at sixty per cent. This was sustained by the Board of General Appraisers (1902), T. D. 23,748, G. A. 5146. The board found that the pearls "were imported in a morocco case, with silk lining, forming a groove running lengthwise, in which the pearls were placed and by which they were held; that they were all matched and assorted as to quality, size, color, and shape, and arranged in a graduated order, the center being the largest, and gradually decreasing in size to the last pearl at each end; that the pearls were invoiced as 'drilled pearls,' and are drilled, and when the boxes were opened gave the appearance of necklaces; that they each constituted extraordinary collections of such and were of the finest ever imported into this country; that by reason of this matching and assortment they in each case possessed a value greatly in excess of the aggregate values of the individual pearls composing the collection."

The Circuit Court affirmed the action of the board. *Neresheimer & Co.* v. *United States* (1903), 131 Fed. Rep. 977. But on appeal the decision was reversed by the Circuit Court of Appeals (1904), 68 C. C. A. (2d Cir.) 654; 136 Fed. Rep. 86. Reviewing the conflicting testimony, the Court of Appeals concluded that the evidence did not warrant a finding that the pearls had been assorted so as to acquire the increased value as a collection which would bring them within the exception suggested in the *Tiffany Case.* It was held that they were dutiable at ten per cent. "by similitude to paragraph 436."

In 1905, Charles E. Rushmore imported eighty-five pearls which the appraiser, in a special report, stated had "been carefully selected, matched, and assorted, and, in fact, are said to have been strung, and require only to be restrung to form a necklace. They are in the same condition as those passed upon by the board in G. A.

5146 (T. D. 23,748)." The Board of General Appraisers, upon this report, reversed the ruling of the collector and decided that the duty was ten per cent., on the authority of the *Neresheimer Case, supra.* No appeal was taken by the Government from this decision; it was rendered on January 21, 1905, and was circulated by the Treasury Department for the information and guidance of officers of customs and others concerned.

It thus appears that prior to 1906, when Citröen imported the pearls now in question, unstrung pearls, though drilled and matched so that they were ready to be strung as a necklace, had been held dutiable at ten per cent. The fact that they were reported to have been previously strung abroad had not been deemed of consequence in the *Rushmore Case,* and the Government had acquiesced in the ruling. Further, the exception indicated by the court in the *Tiffany* and *Neresheimer Cases* was negatived by the Board of General Appraisers, which in Citroen's case found that the pearls were not matched as to color and luster with such care as would enhance their value as a collection. T. D. 28,246, G. A. 6617. And the Circuit Court of Appeals, reversing the Circuit Court, held that there was no reason to disturb these findings. "It is fair to assume," said the Court of Appeals (p. 695), that the ruling in the *Rushmore Case* "actuated the appellant (Citroen) in importing and selling the pearls." And it is now asserted by his counsel at this bar that should the Government succeed, Citroen would be the only person who would have paid sixty per cent. duty on a collection of pearls of the sort which these have been found to be.

Later—in 1909—while the act of 1897 was still in force, Tiffany & Company imported fifty-nine pearls divided into four packages, all loose and all drilled. It appeared from the testimony before the Board of General Appraisers that M. Guggenheim, the ultimate purchaser,

visited the Paris establishment of Tiffany & Company, for the purpose of purchasing a necklace for his wife and finding nothing suitable in stock he requested the salesman to get a number of pearls together to make the desired necklace. The assortment was finally completed, a sketch being made of the necklace as it would appear when finished; and an order was given for the necklace to be made by Tiffany & Company at New York from the pearls selected. While it was not shown that the pearls had been worn abroad, it was found that they may have been, "and probably were temporarily strung in the Paris establishment one or more times to show how the string of pearls would appear as a necklace." On the authority of the decision of the Circuit Court of Appeals in Citroen's case, the Board of General Appraisers sustained the importer's protest, holding that the pearls were dutiable either directly or by similitude at ten per cent. under paragraph 436. T. D. 29,542, G. A. 6864. This was sustained by the Circuit Court (*United States* v. *Tiffany & Company*, 172 Fed. Rep. 300), and its decision was affirmed by the Circuit Court of Appeals, 101 C. C. A. (2d Cir.) 665; 178 Fed. Rep. 1006. Petition for writ of certiorari was denied by this court. 218 U. S. 675.

In its opinion in the present case, the court below (166 Fed. Rep. 696) forcibly expressed its dissatisfaction with the effort to resolve the doubt as to the meaning of the statute by a comparison "depending not upon an examination of the articles themselves, but often upon extrinsic evidence obtained long afterwards." It was a comparison, said the court, "which cannot be uniform, which imposes 10 per cent. upon one aggregation of pearls and sixty per cent. upon a similar aggregation, the rate depending upon the ability to obtain evidence of prior use in foreign countries. A comparison which does not admit of a fixed, definite rule, which encourages partiality, promotes injustice, and has broken down in practical

application. This is illustrated by the fact that in the cases which have come to the.attention of the court the most marked contrariety of opinion has developed as to whether the respective collection was matched for a necklace, and whether a larger price could be obtained for the pearls singly or in combination." The Court of Appeals also stated that it would incline to the opinion, were the question an open one in that court, "that drilled pearls are not excluded from paragraph 436."

In this view we think the court was right. As was pointed out by the Board of General Appraisers: "Pearls just as they come from the shell are, strictly speaking, only such as are in their natural state." But the statute deals with the pearls of commerce. It appears that over seventy-five per cent. of all large pearls when they first come into the hands of wholesale dealers are drilled, usually in a somewhat primitive manner by the pearl fishers. It cannot be supposed that Congress contemplated such a disregard of the facts of trade, and such a radical departure from the policy of former tariff legislation, as would be involved in a construction of paragraph 436 which would exclude drilled pearls. Moreover, the language of the paragraph is "pearls in their natural state, not strung or set." This implies that the description includes pearls that can be strung or set, and pearls cannot be strung unless perforated. The words do not exclude, but embrace pearls that have been pierced, provided they are unstrung and unset.

But if drilled pearls, when neither strung nor set, are included in paragraph 436, the fact that they have been matched or assorted so as to form a collection suitable for stringing, or of being worn strung, does not take them out of the paragraph. Its language makes no distinction of that sort. The selection, or matching, does not alter the character of the pearls.

We are of the opinion that, as in former tariff acts to

which reference has been made, Congress intended to
cover and did cover all pearls in the two paragraphs and
did not leave a class of pearls unenumerated. The words
in paragraph 436 are to be taken as describing a condition
in antithesis to that described in paragraph 434, under
which, if strung or set, imported pearls are dutiable as
jewelry. Such an interpretation provides a simple and
workable test, permitting certainty and impartiality in
administration which should preëminently characterize
the operation of tariff laws, and fulfills, as we believe, the
purpose of Congress.

We conclude that the similitude clause has no applica-
tion and that upon the facts shown the pearls imported
in this case were dutiable under paragraph 436 at ten per
cent.

*Judgment affirmed.*