The judgment of the United States Customs Court, Second Division, is *affirmed*.

UNITED STATES *v.* ADOLPHE SCHWOB, INC. (No. 3600)[1]

United States Court of Customs and Patent Appeals, May 22, 1933

*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham, jr.*, special attorney, of counsel), for the United States.
*James W. Bevans* for appellee.

[Oral argument April 4, 1933, by Mr. Lawrence and Mr. Bevans]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

On February 17, 1931, the appellee entered certain goods for drawback at the port of New York and exported the same on or about

[1] T. D. 46447.

March 10, 1932. These goods consisted of 24 watches, claimed to be manufactured by the appellee from watch movements and watch-cases theretofore separately imported by it. Drawback was claimed to be allowable under section 313 of the Tariff Act of 1930, the relevant portion of which act is as follows:

(a) ARTICLES MADE FROM IMPORTED MERCHANDISE.—Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, except that such duties shall not be so refunded upon the exportation of flour or by-products produced from wheat imported after ninety days after the date of the enactment of this Act. Where two or more products result from the manipulation of imported merchandise, the drawback shall be distributed to the several products in accordance with their relative values at the time of separation.

The collector denied drawback and the importer protested against said decision. The matter then went to the United States Customs Court, where, after hearing the testimony offered by the parties, the court sustained the protest and ordered drawback to be paid. From this decision the Government has appealed.

In this court, the issues have been greatly simplified by the concessions of the Government. The Assistant Attorney General, on oral argument, has waived the question as to whether the exported goods were manufactured or produced in the United States with the use of imported merchandise, and, therefore, this question, which was raised in the court below and by the briefs here, is not before us, it being assumed that in this respect the goods exported were fully within the drawback statute. All other questions are waived by the Assistant Attorney General except one, which is urged vigorously, namely, that the particular exportations here involved are not such as come within the spirit or intent of the said drawback statute. In support of that proposition, the Government has cited numerous authorities.

The facts in the case are substantially these: The appellee imported from Schwob Frères, of Switzerland, in 1930, certain watch movements and cases, not assembled. Thereafter, litigation occurred between the importer and Schwob Frères, as a result of which it was agreed that a considerable amount of this imported merchandise should be repurchased by Schwob Frères. It was the desire of said Schwob Frères that the importer dispose of as much of these goods as was possible in the United States. Finding this not to be feasible, however, it was arranged that the goods should be shipped back to Schwob Frères, and it was requested that the importer attempt to arrange for a drawback of duty on said exported merchandise, in order to facilitate this transaction.

On November 10, 1931, the importer made application to the Treasury Department for the establishment of a rate of drawback

under said section 313. The refusal of the collector to pay drawback was in pursuance of a decision of the Secretary of the Treasury, published in T. D. 45418, 61 Treas. Dec. 166, January 23, 1932, the material portion of which is as follows:

(3) *Drawback.*—Denied on imported watchcases and imported watch movements which it was proposed to assemble into complete novelty watches for the sole purpose of obtaining a refund of 99 per cent of the duties paid, the bureau being of opinion that section 313 (a), Title III, tariff act of 1930, does not contemplate such transactions and that they serve none of the purposes for which the drawback law was enacted. *Tide Water Oil Co.* v. *United States* (171 U. S. 210, 215) and 31 Op. At. Gen. 1 (T. D. 36932) cited as to the purpose of the law. Letter to collector of customs, New York, N. Y., dated January 12, 1932.

The only question involved in the case is whether, in so proceeding, the Treasury Department and the collector were within the law. The Assistant Attorney General argues here that the drawback statute was not intended to apply to any such case; that the importer here did not import for the purpose of manufacturing and exporting, but that he purchased goods abroad, which he found were unsalable here, and then, after a manufacturing process, exported them in order to recoup himself for his losses.

On the other hand, the importer argues that he is fully within the letter and spirit of the law; that the statute gives him the right to manufacture imported goods, upon which the duty is paid, into other manufactured products, to then export them, and to obtain a drawback; that whether he imported them with the purpose of reexporting them is immaterial, so long as he complies with the literal requirements of the law.

As we view the matter, the court below reached the proper conclusion in the case. The authority mainly relied upon by the Government, *Tide Water Oil Co.* v. *United States, supra,* is not controlling in the case at bar. That case announces a principle with which this court fully agrees, namely, that "the object of the drawback was partly, at least, to encourage domestic manufactures." In that case the matter was decided upon facts which were entirely different from those here. Box shooks and steel rods were separately imported, from which boxes were prepared by nailing, the imported material being specially prepared, before importation, for that purpose. Under a drawback statute, Revised Statutes 3019, providing a drawback on all articles "wholly manufactured of materials imported," the Supreme Court held that the assembling of the boxes could not be held to be the production of articles "wholly manufactured in the United States," and that, therefore, no drawback was properly allowable.

Much stress is placed on the opinion of the Attorney General of October 24, 1916, 31 Op. At. Gen. 1, in which the Attorney General advises the Secretary of the Treasury as to the allowance of drawback upon certain exported Turkish cigarettes. It appears that these were

deteriorated and unsalable and were exported to the free port of Singapore, where they were destroyed by fire. The Attorney General held, and properly so, we believe, that this was not an exportation within the meaning of the drawback statute, paragraph O, section 4, tariff act of October 3, 1913. The *ratio decidendi* of the Attorney General's opinion was that the goods were not exported for the purpose of competing in foreign markets with the same articles manufactured in other countries.

Much more in point, we think, is the opinion of the same Attorney General, given on January 18, 1917, 31 Op. At. Gen. 92. In this case, 22 unset cut diamonds were imported, and the Treasury Department was seeking information. as to whether such diamonds, having been thus imported and having been manufactured, by the use of metals, into jewelry in this country, and then exported, were entitled to the benefit of the drawback statute under the Tariff Act of October 3, 1913. The Attorney General made the following quite pertinent suggestions in his opinion:

In my opinion, it is not incumbent upon the exporter to guarantee that the article manufactured or produced in the United States shall be sold after it is exported in the exact condition in which it is exported, nor does his right to a drawback depend upon proof that the article is intended to be sold, or will be sold, in the exact condition in which it is exported. The Secretary of the Treasury is not concerned with the future fate of the article manufactured or produced in this country, provided only that the export is a bona fide export.

The principle of the drawback statute has been frequently stated to be the building up of our export trade and the encouragement of domestic manufactures. It is clear that the manufacture or production of jewelry in this country will be encouraged by import of gems for the purpose of setting the same and by payment of drawback of duties on gems so employed in jewelry, and the export of the jewelry from this country will be equally encouraged, irrespective of the fact that the jewelry, on reaching the foreign country, may be sold as a completed work, or may be sold after being broken up into its component parts.

Nor does the fact that the manufacture or production of the article in the United States is made for the express purpose of obtaining a drawback warrant you in withholding payment of drawback. In my opinion, the doctrine laid down in the case of *United States* v. *Citroen* (1912), 223 U. S. 407, p. 415, in reference to manufacture of articles·for the express purpose of obtaining a lower rate of duty, applies equally well to articles manufactured for the purpose of obtaining drawback. The court said:

When it is found that the article imported is in fact the article described in the particular paragraph of the tariff act, an effort to make it appear otherwise is simply a fraud on the revenue and can not be permitted to succeed. *Falk* v. *Robertson*, 127 U. S. 225, 232. But when the article imported is not the article described as dutiable at a specified rate, it does not become dutiable under the description because it has been manufactured or prepared for the express purpose of being imported at a lower rate.

The importer seems to have brought himself directly within the scope of said section 313 (a). Having done so, he is entitled to the benefit of this statute.

Our attention is called to the case of *Pelz-Greenstein Co.* v. *United States*, T. D. 43196, 55 Treas. Dec. 233, affirmed in 17 C. C. P. A.

(Customs) 305, T. D. 43718. In that case, model gowns were imported, under bond, under section 308 of the Tariff Act of 1922, which provided for the export of the same within six months from importation. After the expiration of the time, the importer sprayed the dresses with certain solutions and attempted to export them with the benefit of drawback. This right was denied to the importer, this court holding that the merchandise was not of the character of imported merchandise to which Congress referred in section 313 of the Tariff Act of 1922.

It is alleged by importer's counsel, and not disputed by Government counsel, that from and after the rendition of the opinion of Attorney General Gregory of October 3, 1913, up until the latter part of 1931, it was the administrative practice of the Treasury Department to allow drawback upon all such exportations as those here involved.

A circumstance is called to our attention in connection with this matter which is significant. On the hearing before the Ways and Means Committee, on the bill which afterwards became the Tariff Act of 1930, Undersecretary of the Treasury Mills appeared before the committee and called attention to the fact that goods previously imported into the United States, and which were unsalable here, were frequently purchased by individuals, slightly processed, and because of the broad construction which had been given to the word "produced," as it appeared in section 313 of the Tariff Act of 1922, were entitled to drawback on exportation, which drawback, in many cases, exceeded the value of the goods. In order to cure this defect, he made the following suggestion to the committee:

In order to remedy these two principal evils growing out of the drawback provisions, the department recommends that section 313 be amended, first, so as to allow drawback only in case the manufacture or production to which the imported merchandise has been subjected in the United States has enhanced its value; and, second, to provide that drawback should not in any case be allowed in respect of merchandise not exported within five years from the date of importation. These amendments would, it is believed, provide a very effective check upon the business of collecting drawback on merchandise for profit. (Tariff Readjustment, 1929, vol. 16, p. 9749.)

However, we find that the first of these suggestions was not followed, and the bill was afterwards enacted into law substantially, in this respect, as it had been in the Tariff Act of 1922. The second suggestion evidently carried weight with the committee, for a limitation of three years was placed upon the privilege of drawback. Section 313 (h), Tariff Act of 1930. This indicates, at least, that the congressional committees in charge of this legislation were cognizant of existing conditions and did not think it desirable to make any changes in the existing law except to establish a period of limitation.

We are of opinion the court below came to the proper conclusion, and its judgment is *affirmed.*