**MATTEL, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 87–08–00843.**

United States Court of
International Trade.

Jan. 31, 1990.

Stein, Shostak, Shostak & O'Hara, Marjorie M. Shostak, Los Angeles, Cal., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Mark S. Sochaczewsky, U.S. Customs Service, Theodore Y. Chong, New York City, for defendant.

DiCARLO, Judge:

This action concerns the proper tariff classification of an assortment of inexpensive plastic toys which the United States Customs Service classified under items 737.40, of the Tariff Schedule of the United States (TSUS) (toy figures of animate objects), 737.49, TSUS (toy figures of inanimate objects), and 737.95, TSUS (toys not specially provided for). Mattel asserts that the merchandise is properly classifiable under item 912.20, TSUS which covers:

Articles provided for in parts 5D and 5E of schedule 7 (except ballons [sic], marbles, dice, and diecast vehicles), *valued not over five cents per unit....*

(emphasis added).

This court has jurisdiction under 28 U.S.C. § 1581(a) (1988). The action was presented in the form of an agreed stipulation of facts in lieu of trial. The Court holds Customs' interpretation of the meaning of the word "unit" in item 912.20, TSUS, is correct and affirms Customs' classification of the toys under items 737.40, 737.49, and 737.95, TSUS.

## BACKGROUND

The merchandise is an assortment of inexpensive plastic toy figures and doll accessories. The figures are approximately one and one half inches in height and have a generally human appearance but represent various human and non-human characters. They are imported in packaged sets of four, ten or 28 figures. The doll accessories include combs, brushes, wigs and beach equipment which are imported in related sets or with the dolls. The parties stipulate that the toys have an individual value of less than five cents each and that the retail sets have a value in excess of five cents.

Customs classified the figures under items 737.40, 737.49, and 737.95, TSUS. The doll accessories were classified under item 737.95, TSUS. Mattel timely protested these classifications claiming that the merchandise should fall under item 912.20, TSUS, a temporary exemption from duties for certain toys "valued not over five cents per unit...."

## DISCUSSION

The parties agree that classification of the merchandise under item 912.20, TSUS, depends upon the proper meaning of the word "unit" in that provision. Mattel asserts that "unit" refers to the individual toys. The government counters that "unit" refers to the packaged retail sets.

Customs' classification is presumptively correct and the plaintiff has the burden of proving otherwise. 28 U.S.C. § 2639(a)(1) (1982). In order to decide whether the merchandise has been properly classified, the Court must consider Custom's classification both independently and in relation to the plaintiff's proposed classification. *Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878, *reh'g denied,* 2 Fed.Cir. (T) 97, 739 F.2d 628 (1984); *Phone–Mate, Inc. v. United States,* 12 CIT ——, 690 F.Supp. 1048, 1050 (1988), *aff'd* 867 F.2d 1404 (Fed.Cir.1989).

As with any statute, construction of a tariff provision must begin with a consideration of its language. *See United States v. Ron Pair Enters., Inc.,* —— U.S. ——, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The meaning of a tariff term is a question of law. *Digital Equip. Corp. v. United States,* 889 F.2d 267, 268 (Fed.Cir.1989); *Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 788 (Fed.Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). Whether particular merchandise fits within that meaning is a question of fact. *Digital Equip. Corp.,* 889 F.2d at 268. Terms used in the tariff schedules are construed in accordance with their common and commercial meanings. *Nippon Kogaku (USA), Inc. v. United States,* 69 CCPA 89, 92, 673 F.2d 380, 382 (1982). In determining the common meaning of a tariff term, a court may consult dictionaries and other reliable references. *Brookside Veneers,* 847 F.2d at 789.

The parties submitted dictionary definitions of the word "unit" which they claim support their positions. The plaintiff quotes Webster's *Third New International Dictionary of the English Language, Unabridged* (1963):

Unit ... 1 a(2): a single thing (as a magnitude or number) that constitutes an undivided whole.... 2 a: a single thing or person or group that is a constituent and isolable member of some more inclusive whole: a member of an aggregate that is the least part to have clearly definable separate existence and that normally forms a basic element of organization within the aggregate....

The government offers citations to other dictionaries, including *Funk & Wagnall's New Standard Dictionary of the English Language* (1956), which defines a "unit" as "[a] single person, thing or group, regarded as an individual, or one of several persons, things or groups...." Both of these definitions refer to individuals as well as groups. They can, therefore, be read to support either position. Consequently, neither is dispositive.

The parties also invite the Court to consider how similar language is used in other TSUS provisions. Both parties rely on item 734.15, TSUS, which includes

Chess, checkers, parchisi, backgammon, darts, and other games played on boards of special design, all the foregoing games and parts thereof (including their boards); mah-jong, and dominoes; any of the foregoing games in combination with each other, or with other games, *packaged together as a unit in immediate containers of a type used in retail sales*
....

(emphasis added). Mattel asserts that if Congress had intended for retail packages to be considered a "unit" under item 912.-20, TSUS, Congress would have included language similar to that used in item 734.-15, TSUS. Trial Brief For Plaintiff at 15. Customs counters that the language in this provision shows that "unit" may refer to retail units. Brief For The United States, Defendant at 5.

The government also points to Headnote 2(a) of Schedule 7, Part 5, Subpart D, TSUS, defining the term "in sets" as it relates to table tennis equipment packaged as a retail unit, for the proposition that Congress has specifically referred to retail sets as the relevant unit. Item 734.15,

TSUS, and Headnote 2(a) are inapposite because the merchandise they cover is necessarily composed of articles which comprise unified entireties. This is not the case here where each figure may be enjoyed individually, and the doll accessories can be used with other dolls.

Mattel also cites to Headnote 6(d)(i) through 6(h)(ii)(II) to Schedule 7, Part 2, Subpart E, TSUS, which regulates the number of certain watches that may be admitted duty free into the United States. Mattel claims these provisions show an intent to regulate the importation of individual watches, each of which is referred to as a "unit." Mattel then relies on the rule of construction *in pari materia* to assert that a similar meaning must be given to "unit" as used in item 912.20, TSUS. Nevertheless, Mattel cites no case or legislative material to support its declaration that the headnote refers to individual watches as "units" rather than watches or groups of watches packaged for retail. Therefore, the Court, declines to decide the scope of a TSUS provision not directly relevant to this action.

As both parties have produced reasonable interpretations of the term "unit" as used in item 912.20, TSUS, the language is not determinative. Where the language itself does not settle the question presented, the court may examine legislative history to assist interpretation. *Madison Galleries, Ltd. v. United States*, 870 F.2d 627, 629 (Fed.Cir.1989); *Berns & Koppstein v. United States*, 13 CIT ——, Slip Op. 89–29 at 6, 1989 WL 24498 (Mar. 13, 1989); *Phone–Mate*, 12 CIT at ——, 690 F.Supp. at 1051.

According to one Senate report, item 912.20, TSUS, "would affect low price, low quality items *sold primarily in bulk vending machines.*" Sen.Rep. No. 564, 97th Cong., 2d Sess. 7, *reprinted in* 1982 U.S. Code Cong. & Admin.News 4078, 4084 (emphasis added). Customs concedes that the use of the word "primarily" implies that Congress did not intend to limit the application of item 912.20, TSUS, to merchandise actually retailed from vending machines. Brief For The United States, Defendant at

**1506**

7. The House report does not address this provision. *See* H.R.Conf.Rep. No. 989, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. & Admin.News 4137.

Although committee reports are more authoritative than comments from legislators, *Garcia v. United States*, 469 U.S. 70, 76, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984), *reh'g denied* 469 U.S. 1230, 105 S.Ct. 1235, 84 L.Ed.2d 371 (1985), such statements provide evidence of Congressional intent when they are consistent with the statutory language and other sources of legislative history. *Brock v. Pierce County*, 476 U.S. 253, 263, 106 S.Ct. 1834, 1840, 90 L.Ed.2d 248 (1986) (considering statement by the sponsor of legislation). The Senator sponsoring the legislation containing this provision explained that his motivation was to protect the domestic vending machine industry. 128 Cong.Rec. 15,359, 15,359–60 (1982) (statement of Sen. Danforth). At the time this provision was passed, that industry faced increasing difficulty in purchasing products that would be sold at the relatively low prices charged for items sold out of many vending machines. *Id.* at 15,-359–60. The legislation's sponsor commented that "there are few things left in this country that a child can purchase with a penny.... We would be doing a favor to children around the country by enacting this bill into law." *Id.* at 15,360 (1982) (statement of Sen. Danforth). This comment is some evidence of the legislative intent because it is consistent with the Senate report and is a reasonable reading of statutory language, *See Pierce County*, 476 U.S. at 263, 106 S.Ct. at 1840, and evidences an intention that the bill address items which would retail at very low prices.

■ Mattel's interpretation of the statute would allow it to group large numbers of toys valued below five cents into packages which would retail at prices that could not be characterized as low and which may be beyond the means of many children. For example, Mattel markets the figures in sets of 28. Assuming each figure would be sold for 4.5 cents, the set would have a retail value of $1.26. A package of 100 would have a retail value of $4.50. In the

Court's opinion, reading item 912.20, TSUS, to exempt such sets from the imposition of duties would violate the Congressional intention behind that provision.

Mattel asserts that Custom's reading of the statute is incorrect because

> If Item 912.20 contemplated a retail *sale* value of not over five cents per *retail sales package* ... the scope of the provision would be extremely limited, since dutiable value would have to be much less than five cents each to permit distribution costs and some small margin of profit in addition to landed costs.

Reply Brief For Plaintiff, 6. Congress knew that this exemption would encompass a very limited class of merchandise. While Mattel may not be able to market its products at retail prices below five cents, Congress did not intend that this TSUS item exempt merchandise sold at the relatively high prices which Mattel's interpretation would allow.

■ The Court notes that Mattel also argues that the Tariff Act requires Customs to use the same value for purposes of classification and for purposes of valuation for assessing duties. Under 19 U.S.C. §§ 1500, 1503, the amount of an *ad valorem* duty is computed from the value of the merchandise as determined under 19 U.S.C. § 1401a. Mattel argues that these provisions require a finding that the "per unit value" referred to in item 912.20, TSUS, is the value of the merchandise as calculated under 19 U.S.C. § 1401a and, therefore, that the relevant "unit" is the individual article rather than the retail sets. In its reply brief, Mattel cites *Whittaker, Clark & Daniels, Inc. v. United States* 34 CCPA 164, C.A.D. 360 (1947). *Whittaker* stands for the proposition that an *ad valorem* duty must be calculated from the appraised value of the merchandise. *Id.* at 171. It does not require that classification be based on the value of an individual item when that item is imported and sold in a set. Therefore, the Court finds this argument to be unpersuasive.

The Court finds that the imported articles do not fall within the limited scope of item 912.20, TSUS, because they are sold in

## CONCLUSION

■ The legislative history indicates a Congressional intention that "unit" as used in item 912.20, TSUS, refers to the retail unit. The Court finds the imported toys are not classifiable under item 912.20, TSUS, because they are imported and sold in a retail unit valued in excess of five cents. Accordingly, the Court affirms Customs' classification of the toys under items 737.40, 737.49 and 737.95, TSUS.