**MATTEL, INC., Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 90–1279.**

United States Court of Appeals, Federal Circuit.

Feb. 13, 1991.

Marjorie M. Shostak, Stein, Shostak, Shostak & O'Hara, of Los Angeles, Cal., argued for plaintiff-appellant. With her on the brief was David R. Stepp.

Mark S. Sochaczewsky, Commercial Litigation Branch, Dept. of Justice, of New York City, argued for defendant-appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Attorney in Charge, International Trade Field Office.

Before ARCHER, CLEVENGER and RADER, Circuit Judges.

RADER, Circuit Judge.

Mattel, Inc. (Mattel) appeals from the judgment of the United States Court of International Trade. *Mattel, Inc. v. United States,* 733 F.Supp. 1503 (Ct. Int'l Trade 1990). The trial court interpreted "unit" in Item 912.20 Tariff Schedules of the United States (TSUS)[1] to mean "retail package." This court reverses.

---

1. The TSUS, which was in effect at the time the classification at issue here was made, was later

## BACKGROUND

Mattel imported plastic toy figures and Barbie doll accessories[2] into the United States in retail packages. Each M.U.S.C.L.E.S. package included 4, 10, or 28 figures. The Barbie accessories came as part of larger toy sets. The parties stipulated that no single toy or accessory had a value of more than five cents.[3]

Under the TSUS, the United States Customs Service (Customs) appraised and classified each separate toy and accessory. Customs classified the M.U.S.C.L.E.S. figures under either Item 737.40 as "toy figures of animate objects" or Item 737.49 as "toy figures of inanimate objects." The doll accessories fell under Item 737.95 as "toys not specially provided for." Each of these three Items carried a duty of 9.6% *ad valorem.*

Mattel protested the classification, arguing that Customs should classify these imports under Item 912.20 TSUS. Item 912.-20 exempts from duty certain small toys valued at not over five cents per unit. Item 912.20 TSUS covers:

[A]rticles provided for in parts 5D and 5E of schedule 7 (except balloons, marbles, dice and diecast vehicles), valued not over five cents *per unit.* . . .

(Emphasis added.)

Customs denied Mattel's challenge to its classification, determining that the value of each retail package of toys exceeded five cents. By viewing each package as the "unit," Customs denied Mattel classification under TSUS Item 912.20. Mattel appealed Custom's classification decision to the Court of International Trade.

In lieu of a trial, the parties presented stipulated facts. On the basis of these stipulations, the Court of International Trade affirmed Customs's classification of the toys and ruled that Customs correctly interpreted the word "unit" in Item 912.20. *Mattel,* 733 F.Supp. 1503.

## DISCUSSION

This court must determine the meaning of the term "unit" in Item 912.20 TSUS in order to ascertain its applicability to this case. Mattel argues that the term "unit" means each separate toy. The Government contends that the term refers to the entire retail package.

 The meaning of a tariff term is a question of law. *Digital Equip. Corp. v. United States,* 889 F.2d 267, 268 (Fed.Cir. 1989). Therefore, we review *de novo* the legal findings of the Court of International Trade. Based on that review, we conclude that "unit" in Item 912.20 TSUS means each separate article or individual toy. The language, context, and history of the statute support this reading. In addition, Customs's appraisement and classification of each toy and accessory is consistent with this interpretation.

Item 912.20 TSUS suspends duties on toy "articles ... (except balloons, marbles, dice and diecast vehicles) valued not over five cents per unit." The term "unit" in this phrase refers to the earlier word "articles." Read in conjunction with this earlier term, "per unit" emphasizes that each separate article must fall within Item 912.20's five-cent maximum value.

Thus, Item 912.20 TSUS first focuses on individual "articles." To underscore the

replaced by the Harmonized Tariff Schedule of 1988, Pub.L. No. 100–418, 102 Stat. 1148 (codified at 19 U.S.C. prec. § 1202 note (1988)).

**2.** The plastic toy figures—M.U.S.C.L.E.S. ("Millions of Unusual Small Creatures Lurking Everywhere")—apparently depict professional wrestlers, some human and others non-human. Based on this distinction, the United States Customs Service broke the hundreds of figures into two classes—"animate" and "inanimate."

· The Barbie toys at issue include:

1) a small plastic brush and comb from the "Barbie Fashion Add–On" set;

2) a play towel and three small toys from the "Barbie Play Pak"; and

3) a comb, brush, calendar, and toys from the "Peaches 'n Cream Barbie" set.

**3.** One invoice in an appendix showed M.U.S.C.L.E.S. figures imported in a carton valued at $23.76. This import carton apparently included nearly 500 figures. According to the parties' stipulations, however, Mattel sold these toys to consumers in retail packages of 4, 10, or 28 separate plastic creatures.

emphasis on each separate toy, however, the item specifies that the tariff exemption applies to each article on a "per unit" basis.

The five-cent cut off also clarifies the meaning of the exemption. By setting the ceiling at articles worth a nickel or less, Item 912.20 strictly limits the application of the exemption. Very few single toys are worth a nickel or less. It is especially hard to imagine a retail package of several toys worth a nickel or less. The low five-cent ceiling in conjunction with the terms "articles" and "per unit" limits Item 912.20 to inexpensive single toys, not retail packages containing several toys.

Dictionaries also enlighten the meaning of "unit." As a primary definition of "unit," dictionaries often list "a single thing." *Black's Law Dictionary*, Revised Sixth Edition, 1990, p. 1533; *Webster's New Collegiate Dictionary*, 1975, p. 1279; *Webster's Third New International Dictionary of the English Language*, Unabridged, 1976, p. 2500. In the context of the toys and accessories at issue here, each plastic figure and each Barbie accessory is a "single thing." Dictionaries also refer to an "isolable member of some more inclusive whole," *id.*, or "[o]ne of the separate parts or members of which a complex whole or aggregate is composed...." *Shorter Oxford English Dictionary*, Revised Third Edition, 1959, p. 2303. Each plastic figure and each Barbie accessory is an isolable or separate part. The statutory language refers to each separate article— in this case, a toy or accessory.

While we find support in the dictionary for defining "unit" as a single item, we need not rely on lexicographic analysis alone. When Congress intends to apply a duty to a retail package or unit, it says so. For example, Item 734.15 TSUS refers to board games "packaged together as a unit in immediate containers of a type used in retail sales." Additionally, Headnote 2(a), Schedule 7, Part 5, Subpart D, TSUS refers to table tennis equipment "packaged together as a unit in immediate containers of

a type used in retail stores." In other provisions, Congress has used "unit" to mean a retail package. In this case, however, Congress used "unit" to refer to each inexpensive article.

Item 912.20 TSUS does not use the "packaged together" language nor any other language indicating an intent to impose a duty on the retail unit. Instead, TSUS Item 912.20 exempts from duty articles valued at no more than five cents per unit. Elsewhere, Schedule 7 uses the word "unit" to mean a single article. *See, e.g.,* Schedule 7, Part 2, Subpart E, Headnote 6(d)(i)—6(h)(ii)(II) (Watches, Clocks, and Timing Apparatus). Thus, Congress's use of "unit" in other tariff provisions supports its use in Item 912.20 as referring to each separate toy or accessory.[4]

The legislative history of Item 912.20 TSUS supports the "single article" definition of unit. The 1982 Senate Report explained that this provision "would affect low price, low quality items sold *primarily* in bulk vending machines." S.Rep. No. 564, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. & Admin.News 4078, 4084 (emphasis added). This report acknowledged that Item 912.20 would extend beyond articles sold in bulk vending machines. When Congress renewed Item 912.20 TSUS in 1988, the Conference Committee underscored this understanding:

> [T]he scope of this provision is not limited to toys for bulk vending machines and that the subject articles consist of a variety of small items....

H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess., *reprinted in* 1988 U.S.Code Cong. & Admin.News 1547, 1785, 1786. The individual plastic figures and Barbie accessories are low price, low quality items. This case arises only because appellant imports these items in packages of several toys. Yet neither the tariff language nor its legislative history puts restrictions on how these small toys are packaged or sold. Indeed, the parties have agreed that neither the

---

4. Congress in enacting TSUS Item 912.20 did not in any fashion refer to protections for domestic packagers. Although the dissent professes concern about the domestic packaging industry, neither party alluded to any evidence of harm or benefit to packagers. Such a concern, in any event, should properly be directed to Congress.

binding statutory language nor the informative legislative history limits Item 912.20 solely to vending machine toys.[5] In any event, the legislative record does not support the Government's construction of the statute.

Finally, Customs's treatment of the articles also supports interpreting "unit" to apply to each item. Customs separately appraised and classified each M.U.S.C.L. E.S. toy upon entry. It classified some individual figures as "animate," and others as "inanimate." Customs also found that each figure had a dutiable value of less than five cents. In addition, Customs appraised and classified each Barbie accessory. Again, it identified these separate articles as valued at less than five cents. After disregarding packaging in classifying the individual toys upon entry, Customs now argues that packaging should determine the duty. Customs's actions speak more eloquently than its words.[6]

## CONCLUSION

The Court of International Trade incorrectly defined "unit" in Item 912.20 TSUS to mean "retail package." Because these articles satisfied the terms of Item 912.20 TSUS, they qualify for duty-free classification. This court, therefore, reverses the trial court's judgment.

**REVERSED**

CLEVENGER, Circuit Judge, dissenting.

I would affirm the judgment below. Neither the text alone of the TSUS Item 912.20 nor the dictionary definition resolve the question of whether the unit, or "single thing," is the individual plastic figure or the package in which the figures are sealed abroad for importation and subsequent domestic sale without alteration of the package. Furthermore, the legislative history as to the definition of the word "unit" is sparse and inconclusive. Nor does the classification on Mattel's invoice, that some of the toy figures are inanimate representations (even "imaginary and hybrid") and some animate, a classification later recognized by Customs after it declined to permit duty-free importation under 912.20, serve to resurrect, like Lazarus, the MUSCLEmen as distinctly separate legal entities. In my view, however, the policy and purpose of the statute is unmistakable: to permit the duty-free importation of quite inexpensive toys, the kind that are sold individually in coin vending machines.[1] Every child and parent knows them well. In sum, can it be stated unblushingly that Congress intended packaged toys valued at more than 5 cents each, such as each of the packages of MUSCLEmen in this case, to be imported duty-free, as will be the result

---

**5.** Mattel made the following claims in its Complaint and the Government admitted them in its Answer.

> 8. The statutory provision in Item 912.20, TSUS, by its terms, *is not limited to items sold in bulk vending machines.*

Complaint and Answer, ¶ 8 (emphasis added).

**6.** The dissent suggests that this opinion's reading of TSUS Item 912.20 is not consistent with the principle of classifying goods "as and when imported." The doctrine of *Simod America Corp. v. United States*, 872 F.2d 1572 (Fed.Cir. 1989), however, focuses on the condition of the dutiable product itself at the time of importation, not on packaging. *Simod* decided whether imported shoe components were "substantially complete" and thus dutiable as finished footwear. *Simod* did not ask if the shoe products were packaged in retail shoe boxes or bulk plastic bags. After all, undutiable packaging— cardboard, plastic, packing materials—has little relation to the "condition" of the dutiable merchandise. In this case, neither party contests

the "substantial completeness" or "condition" of the toys and accessories. *Simod* relied on *United States v. Citroen*, 223 U.S. 407, 32 S.Ct. 259, 56 L.Ed. 486 (1912) which stated:

> The rule is well established that 'in order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported.'

*Id.* at 414–15, 32 S.Ct. at 260 (citations omitted). *Citroen* clarifies that the "as imported" doctrine depends on "an examination of the article itself." This examination does not extend to undutiable external wrappings or containers. *See* TSUS General Headnote and Rule of Interpretation 6(b)(i); *Don W. Snyder Co. v. United States*, 67 Cust.Ct. 1 (1972).

**1.** "This provision would affect low price, low quality items sold primarily in bulk vending machines." S.Rep. No. 97–564, 97th Cong.2d Sess., *reprinted in* 1982 U.S.Code Cong.Adm. News 4078, 4084.

under the majority opinion? Upon prevailing here, Mattel will be free to include in its retail units as many figures or plastic pieces as it chooses, regardless of the amount over 5 cents the consumer will be charged for the unit. While not dispositive of the outcome here, there is evidence of one imported MUSCLEmen unit valued at $23.76.

In my view Mattel, by choosing to import the articles already packaged in sealed units of multiple items for retail sale, has defined the unit upon which the U.S. Customs Service must assess a duty according to the appraised value at entry. Mattel should only receive the benefit of Item 912.20 by choosing to import the plastic pieces individually or in bulk and having them packaged in retail units within the United States customs territory. Congress recognized that "items in the same price and quality range are not domestically *produced*," S.Rep. No. 97–564, 97th Cong.2d Sess., *reprinted in* 1982 U.S.Code Cong. Admin.News 4078, 4084 (emphasis added), but we may not presume that Congress also intended Item 912.20 to subsidize the foreign packaging industry. The majority does so, with its *sub silentio* addition of "or packaged" to the Senate Report.

Finally, "the principle is so basic that it hardly needs to be mentioned," *Simod America Corp. v. United States*, 872 F.2d 1572, 1577 (Fed.Cir.1989), that an article's classifiable "status must be determined upon the basis of its condition *as and when imported.*" *Kurtz Importing Co. v. United States*, 420 F.2d 746, 748 (CCPA 1969) (emphasis added; citing *Hecht Pearl Co. v. United States*, 18 C.C.P.A. (Customs) 171, 175 (1930)). Here, the imported goods are not individual figures of less than 5 cents value; instead, the goods as and when imported are already assembled in thematic retail packages. We are instructed by *Simod*, 872 F.2d at 1578, that "samples of the merchandise ... are most potent witnesses." *Marshall Field & Co. v. United States*, 45 C.C.P.A. (Customs) 72, 81 (1958). Plaintiff's Exhibit 2 demonstrates that the MUSCLEmen are packaged so as to be used together in "slugfests in the streets! Free-for-alls on the freeways! Brawls in the malls!" or within a "HARD KNOCKIN' ROCKIN' RING" which requires a minimum of two MUSCLEmen (imported value 9.4 cents) to use.

The responsibility of the Department of the Treasury is to protect the public fisc, *Thor Power Tool Co. v. Commissioner of the Int. Rev. Serv.*, 439 U.S. 522, 542, 99 S.Ct. 773, 786, 58 L.Ed.2d 785 (1979), and we owe a substantial measure of deference to the expertise of the Customs Service when determining whether an importer has carried its statutory burden of proof of overcoming a classification decision. 28 U.S.C. § 2639(a)(1) (1988); *Simod* at 1576.

For these reasons, I respectfully dissent.