**F. W. MYERS, INC.**

v.

**UNITED STATES.**

**C.D. 2519.**

United States Customs Court,
Second Division.

March 17, 1965.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz and Earl R. Lidstrom, New York City, of counsel), for plaintiff.

John W. Douglas, Asst. Atty. Gen. (Andrew P. Vance and Alfred A. Taylor, Jr., New York City, trial attorneys), for defendant.

Before LAWRENCE, RAO and FORD, Judges.

RAO, Judge.

This case is concerned with the proper dutiable classification of certain cardboard packaging material used in the retail distribution of instant mashed potatoes. It was imported by plaintiff for the account of the R. T. French Co. of Rochester, N. Y., and was assessed with duty by the collector of customs at the port of Ogdensburg, N. Y., at the rate of 12¾ cents per pound, pursuant to the provision in paragraph 1406 of the Tariff Act of 1930 for lithographically printed articles, die-cut or embossed.

Various claims have been interposed by plaintiff, both in its original protest and by way of amendment thereto, to controvert the collector's assessment and reference will be made to each of them, infra. It is plaintiff's primary contention, however, that, in its imported condition, the subject packaging is in the form of boxes and, as such, it is specifically excluded from the scope of paragraph 1406, supra, and expressly provided for in paragraph 1413 of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas.Dec. 305, T.D. 51802. These respective provisions read as follows:

"Par. 1406. Pictures, calendars, cards, labels, flaps, cigar bands, placards, and other articles, composed wholly or in chief value of paper lithographically printed in whole or in part from stone, gelatin, metal, or other material (except boxes, * *) * * * all articles other than those hereinbefore specifically provided for in this paragraph, * * *; exceeding twelve and not exceeding twenty one-thousandths of one inch in thickness, * * *; exceeding thirty-five square inches cutting size in dimensions, 12 cents per pound, and in addition thereto on all said articles exceeding twelve and not exceeding twenty one-thousandths of one inch in thickness, if either die-cut or embossed, three-fourths of 1 cent per pound; * * *."

Paragraph 1413, as modified, supra—

"Boxes, composed wholly or in chief value of paper, papier-mache or paper board, and not specially provide for .......... 17½% ad val."

Plaintiff's alternative contentions invoke the following provisions:

Paragraph 1413 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the

General Agreement on Tariffs and Trade, 91 Treas.Dec. 150, T.D. 54108—

"Paper board and pulpboard, including cardboard and leatherboard or compress leather, plate finished, supercalendered or friction calendered, laminated by means of an adhesive substance, coated, surface stained or dyed, lined or vat-lined, embossed, printed, or decorated or ornamented in any manner (except pulpboard in rolls for use in the manufacture of wallboard, surface stained or dyed, lined or vat-lined, embossed, or printed, and except hardboard) ........ $6.16 per ton of 2,000 lb., but not less than 6% nor more than 12½% ad val."

Paragraph 1413 of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas.Dec. 402, T.D. 52373, supplemented by Presidential proclamation, 85 Treas.Dec. 116, T.D. 52462—

"Manufactures of paper, or of which paper is the component material of chief value, not specially provided for (except ribbon fly catchers or fly ribbons) ..........17½% ad val."

Paragraph 1405 of the Tariff Act of 1930, as modified by the sixth protocol, supra—

"Papers with coated surface or surfaces, not specially provided for ................... 2.125¢ per lb. and 6% ad val."

Paragraph 1405 of the Tariff Act of 1930, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, 90 Treas.Dec. 234, T.D. 53865—

"Bags and other articles (not including printed matter), not specially provided for, which are dutiable under paragraph 1405, Tariff Act of 1930, by reason of being composed wholly or in chief value of any paper specified in that paragraph ...... ................... 2½% per lb. and 10% ad val."

Paragraph 1410 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, supra—

"Unbound books of all kinds, * * and printed matter, all the foregoing not specially provided for:

"If of bona fide foreign authorship:

*    *    *    *    *    *

"Other (except diaries) 5% ad val."

Paragraph 1410 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas.Dec. 121, T.D. 52739—

"Printed matter not specially provided for, not of bona fide foreign authorship * * * .. 10% ad val."

At the trial of this action, a sample of the subject merchandise was received in evidence at plaintiff's exhibit 1. It was described in the record as "a lithographed folding box, side seam glued," and the parties have stipulated that this article is covered with paper lithographically printed and that it is made of either cardboard or paperboard. The record further establishes that the cardboard is 18 one-thousandths of 1 inch in thickness.

The sole witness in the case was Mr. Roger L. Snyder called on behalf of plaintiff. He stated that he has been associated with the R. T. French Co. for almost 10 years as a buyer of packaging material. The R. T. French Co. is a firm which handles food products for retail consumption, principally potatoes, spices and mustard.

One of the services which this witness performs for the French Company is the purchasing of items such as plaintiff's exhibit 1, and he estimated that in the course of years he has bought about 250 million of them. He pointed out that the side seam of the exhibit has been sealed

with an adhesive, but that the bottom and top flaps are not closed until after the carton is automatically filled with two pouches containing potatoes. "[A]dhesive is [then] applied to the top and bottom flaps, the box then enters a retention belt to give the glue time to set and at the other end, they are then of course inserted into a corrugated shipping case." The sealing of the ends serves to retain what is inserted in the carton, to keep it closed, and to prevent pilferage.

This witness further testified that he did not have anything to do with the preparation of the written matter appearing on exhibit 1. He believed this was done in Canada.

The printing on the exhibit is in both English and French. It consists of directions for the preparation of French's instant mashed potatoes, a statement of the ingredients, a picture of a potato and of a baby presumably eating mashed potatoes, the emblem of the French Company, and some general promotional statements.

In contending that items in the condition of plaintiff's exhibit 1 are, in fact, boxes, and, therefore, are expressly excluded from the provisions of paragraph 1406, supra, counsel for plaintiff frankly acknowledges the contrary view expressed in the case of Coty (Inc.) v. United States, 54 Treas.Dec. 347, T.D. 43030, and, in effect, seeks a reversal of that conclusion. There, articles in apparently the same condition as plaintiff's exhibit 1 were held not to be sufficiently processed to be boxes, and, therefore, were more appropriately provided for in paragraph 1313 of the Tariff Act of 1922, as paperboard, cut or shaped for boxes, than as boxes. The opinion of the court is succinctly expressed in the syllabus, wherein the following is stated:

"Paper board or cardboard, cut or shaped for boxes but not susceptible for use as containers in that neither end is closed or capable of being closed without the addition of paste, glue, or other means of fastening, is properly classifiable under the provision in paragraph 1313 of the act of 1922 for 'Papers and paper board * * * including cardboard * * cut or shaped for boxes,' as claimed by the plaintiff, rather than under said paragraph as boxes, as classified by the collector."

We are not convinced by any argument advanced by counsel for plaintiff herein that the court reached an incorrect conclusion in the Coty case. Indeed, we were of similar opinion in the case of B. Shackman & Co. v. United States, 26 Cust.Ct. 111, C.D. 1309, wherein we observed that an essential characteristic of a "box" is that it be capable of use as a container.

Inasmuch as it is an established principle of customs jurisprudence that merchandise is dutiable in its imported condition (United States v. Citroen, 223 U.S. 407, 32 S.Ct. 259, 56 L.Ed. 486; United States v. Lo Curto & Funk, 17 CCPA 342, T.D. 43777), the conclusion that a box must be capable of use as a container contemplates that it must have acquired that property at the time it is imported. It can not be said that the article at bar had then reached that stage of development. While it is in the shape of a box, when the sides are placed at right angles to the front and back, it does not possess the capacity to serve as a container until at least one of the end flaps is sealed with an adhesive. As is evident from the Coty case, supra, with which we are in agreement in all particulars, it is only when the imported carton has been so formed as to be capable, by folding, or other self-contained manipulation, of being converted into a complete box ready for use as a container that it is classifiable as a box even though it be imported in an unfolded or otherwise knocked-down condition.

It must be remembered that the competition in the Coty case, supra, was between those provisions of paragraph 1313 of the Tariff Act of 1922, which embraced boxes on the one hand and cardboard, cut or shaped for boxes, on the

other. Although the decision was called to the attention of Congress in the "Summary of Tariff Information, 1929, on Tariff Act of 1922," page 1879, no change in the language of the respective provisions was made when they were incorporated into paragraph 1413 of the Tariff Act of 1930. The principle of legislative ratification of judicial interpretation operates to clothe the conclusion in the Coty case with congressional sanction and to suggest its compatibility with the legislative purpose in employing this particular phraseology. International Expediters, Inc. v. United States, 41 CCPA 156, C.A.D. 543, and cases cited therein. Sellers, etc. v. Cronite Co., Inc., etc., 45 CCPA 27, C.A.D. 668.

Under the circumstances, we find no merit in the contention that the packaging at bar is excluded from paragraph 1406 and embraced by paragraph 1413, as modified by the General Agreement on Tariffs and Trade, supra, for the reason that it consists of boxes. If this material has not been converted into boxes which are beyond the scope of paragraph 1406, it has not yet become boxes within the purview of paragraph 1413, and that provision is clearly inapplicable.

It seems equally clear that that portion of paragraph 1413, as modified by the Annecy protocol, supra, upon which plaintiff alternatively relies, is also inapplicable. This is a designation of manufacturers of paper which are not elsewhere specially provided for, which can not serve to embrace lithographically printed articles, other than boxes, which are specifically covered by the language of paragraph 1406. Moreover, in the absence of legislative intent to the contrary, a designation of "articles" is generally construed to be more specific than a designation of "manufactures of." United States v. Garlock Packing Co., 32 CCPA 79, C.A.D. 289; International Expediters, Inc. v. United States, supra.

We turn now to a consideration of the contention that the merchandise at bar is included within the scope of that portion of paragraph 1413 of the Tariff Act of 1930, as modified by the sixth protocol, supra, which provides for "Paper board and pulpboard, including cardboard * * * printed, or decorated or ornamented in any manner * * *." By reason of the specific enumeration of particular processes of advancement, as well as the text of the paragraph as a whole, we are of opinion that the language in question was designed to describe paperboard and pulpboard, etc., in the form of material which, except as curtailed in adaptability by subjection to one or more of the designated processes, is otherwise susceptible of multiple uses. The provision does not refer to such paperboard or pulpboard as has been converted into articles having a limited use deriving from other than the named stages of advancement.

In view of the fact that the cutting, folding, and pasting of the instant cardboard are processes not described by this provision which operate to adapt it to a specific use not characteristic of uncut, unfolded, and unpasted cardboard, it is something more than the cardboard provided for in this portion of paragraph 1413, as modified, supra. Moreover, it would seem that the provision for lithographed articles of stated dimensions which plainly describes the merchandise at bar is more specific and limited in scope than paperboard, printed, decorated, or ornamented in other manner.

For reasons which require no extensive elaboration, it must also appear that the importation at bar is more specifically provided for in paragraph 1406, supra, than in either of the claimed subdivisions of paragraph 1405. Both of the latter are modified by the phrase "not specially provided for," and by clear import relate to surface-coated papers for which there is no other specific provision. Whether or not paperboard which has been covered with paper lithographically printed properly responds to description as surface-coated paper, as urged by counsel for plaintiff, need not be here determined, for, in any event, the provision for other articles composed wholly or in chief value of paper lithographically printed in whole or in part, of specified

dimensions, if either die-cut or embossed, more narrowly and exclusively embraces the importation at bar than does the more general phraseology of the involved provisions for surface-coated paper.

By the same token, we deem it unnecessary to consider whether or not the instant merchandise is embraced by either of the provisions in paragraph 1410, as modified, supra, for printed matter, since the printed matter therein referred to is that not otherwise specially provided for.

By reason of the foregoing, we find no merit in any of the contentions advanced by counsel for plaintiff. All claims in the protest before the court are, therefore, overruled.

Judgment will be entered accordingly.