(C.D. 2946)

## B. Feder v. United States

United States Customs Court, First Division

(Decided April 6, 1967)

*Siegel, Mandell & Davidson* (*Allan H. Kamnitz* and *David Serko* of counsel) for the plaintiff.

*Barefoot Sanders*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER, and WATSON, Judges, and WILSON, Senior Judge

WILSON, Judge: These two protests were consolidated for trial. The imported merchandise is invoiced as "Dressed Horse Tail Hair. Silvergrey 27″ up" in protest 64/12472, and "27 up Silver Grey Horse Hair Horse Tail Drawn" in protest 64/12473. The hair was exported from Canada and entered at Champlain, N.Y. This material was classified under paragraph 1541(a), Tariff Act of 1930, as modified by

the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, as "Violin bow hair" and assessed with duty at 20 per centum ad valorem.

The importer claims the merchandise is free of duty under paragraph 1688 of the above original act as "Hair of horse * * * cleaned or uncleaned, drawn or undrawn, but unmanufactured, not specially provided for."

It is agreed that the material involved consists of horsehair. The issue presented by the record is whether, at the time of importation, the horsehair in question had been advanced in condition sufficiently to be considered as violin bow hair as classified or whether the imported horsehair is "Hair of horse * * * unmanufactured" as claimed by plaintiff.

The substance of the evidence in this case consisting of the testimony of five witnesses, four called by the plaintiff and one by the defendant, and five exhibits, four introduced by the plaintiff and one by the defendant, is as follows:

Plaintiff's exhibit 1 is a representative sample of the merchandise as imported; exhibit 2 shows the condition of the hair in exhibit 1 after it has been washed and picked; exhibit 3 represents the horsehair which has been further processed and bundled into proper lengths; and exhibit 4 represents the horsehair which has been fully manufactured for use in making or repairing violin bows.

The testimony of the plaintiff, Mr. Feder, the importer, satisfactorily establishes that the horsehair as imported (exhibit 1) was covered with kerosene; that approximately 40 percent of the hair consisted of off-color material, dead hair, and hair of improper lengths. It was necessary to wash the imported horsehair in a commercial soap detergent, pick out the unusable hairs, and cut and assort the horsehair into proper lengths in order to manufacture it into a usable product. The discarded hair was used for other purposes. Plaintiff's other witnesses corroborated Mr. Feder's testimony to the effect that the merchandise in the condition as imported was not violin bow hair and could not be used for that purpose until extensively processed.

There is clearly no evidence in the record to support the statement of counsel for the Government (R. 6) "that prior to exportation the merchandise at bar was cut and sorted as to color and length for the purpose of making it fit for use as violin bow hair * * *."

The Government's only witness, Alfred Manzella, a United States customs line examiner, testified that he bought defendant's exhibit A, a violin bow, from Alco Music Co. in New York. He stated that the exhibit was imported from Germany. It should be noted that the horsehair in plaintiff's exhibit 1 came from Canada.

This witness was asked whether he saw any similarities between plaintiff's exhibit 1 and defendant's exhibit A. He replied as follows:

"Well, the similarity lies mainly in the color and the length, which is our determining factor in the making of bow hair" (R. 46-47). This is contrary to the testimony of plaintiff's witnesses, all of great experience in the bow hair business.

This witness also testified as follows on cross-examination:

Q. Did I understand you correctly, in answer to a question from one of the Bench, that Exhibit 1, the bunch of hair there, can be used in the condition as imported on a violin bow?—A. From my experience in asking the trade, yes.

Q. Without any sorting, washing; just as is?—A. Yes. [R. 50.]

This witness also correctly answered a question from the bench as follows:

CHIEF JUDGE OLIVER: Have you any familiarity with the bow hair expertly?

THE WITNESS: No, sir. [R. 46.]

The court is of the opinion after reviewing the testimony of Mr. Manzella that the plaintiff's testimony stands substantially uncontroverted.

The presumption in protest cases is that the collector's classification is correct. *McKesson & Robbins, Inc.* v. *United States,* 27 CCPA 157, C.A.D. 77. To overcome such presumption, the plaintiff must show by clear, credible, and probative evidence that the classification is erroneous and also that the claimed classification is correct. *Joseph E. Seagram & Sons, Inc.* v. *United States,* 30 CCPA 150, C.A.D. 227; *Atlantic Aluminum & Metal Distributors, Inc.* v. *United States,* 47 CCPA 88, 91, C.A.D. 735, and cases cited therein.

The imported merchandise is admittedly horsehair. This squarely places the merchandise within the language contemplated by paragraph 1688, *supra,* reading in part "Hair of horse."

It is clear from the preponderance of the evidence that the involved merchandise, in its condition as imported, is *not* a manufactured product of "Hair of horse." Even after very substantial processing after importation, only about 60 percent of the imported horsehair product can be utilized as "Violin bow hair."

On this record, the court finds that the imported merchandise is not "Violin bow hair" as classified and assessed.

The proper classification of imported merchandise rests upon its condition as imported. *United States* v. *Baker, Perkins, Inc., R. F. Downing Co., Inc.,* 46 CCPA 128, 131, C.A.D. 714; *Worthington* v. *Robbins,* 139 U.S. 337, 341; *Dwight* v. *Merritt,* 140 U.S. 213, 219; *United States* v. *Citroen,* 223 U.S. 407, 414, and cases cited. There is nothing of record in this case which indicates that the collector of customs adhered to this principle. The testimony as hereinbefore reviewed shows he did not.

The case of *Redden & Martin* v. *United States*, 5 CCPA 485, T.D. 35147, cited by defendant is not applicable. In that case, the merchandise had been brought into a condition where its only practical use or purpose was to be finished as scissors blades and was commercially unsuitable for any other purpose. Those articles were held to be properly assessed under the provisions for "scissors and shears, and blades for the same, finished or unfinished" under paragraph 152, Tariff Act of 1909. It is at once discerned that the foregoing case was decided under different facts and under provisions of a tariff act unrelated to the tariff provisions here under consideration.

In *Loewengart & Company* v. *United States*, 53 CCPA 78, C.A.D. 880, cited by defendant, the merchandise consisted of goatskins which were classified under paragraph 1530(c), Tariff Act of 1930, as "vegetable-tanned rough leather made from goat or sheep skins (including those commercially known as India-tanned goat or sheep skins)," and assessed with duty at 10 per centum ad valorem. The protest claimed the merchandise free of duty under paragraph 1765 as "Skins of all kinds, raw, and hides not specially provided for." It appeared that the processing of the goatskins *prior* to exportation required several procedures. The skins were not "raw" as exported and the protest was overruled. In the case at bar, the processing procedures *after* importation were many as heretofore shown. Prior to exportation the merchandise, represented by exhibit 1, was a conglomeration of horsehair having many imperfections and was usable only to the extent of about 60 per centum of the imported quantity as "Violin bow hair."

Likewise, the cases of *Waltham Watch Co.* v. *United States (Jaeger Watch Company, Inc., Party in Interest)*, 25 CCPA 330, T.D. 49425; *Norge Division, Borg-Warner Corp.* v. *United States*, 44 Cust. Ct. 121, C.D. 2164, cited by defendant, are considered inapplicable. In those cases, respectively, the imported merchandise consisted of *unfinished* pillar plates requiring *further* processing after importation, and incomplete or unfinished packing boxes consisting of five-sided wooden articles imported in a knocked-down condition, each being completely fabricated, but not assembled or attached. Thus the merchandise in those cases was subject to processes *prior* to importation and had reached a stage where it was fit for no other useful purpose. The horsehair in the case at bar cannot be said to have reached a similar stage prior to importation, nor on this record is the horsehair unfinished violin bow hair. It is merely horsehair, unmanufactured.

Each case must be decided on the facts of record therein. In the instant case, the merchandise represented by plaintiff's exhibit 1 is not violin bow hair in the condition as imported. The imperfections therein are many and include various colors, sizes, dirt, and kerosene.

Horsehair in that condition is not usable as violin bow hair without extensive processing.

Moreover, the horsehair as exported has *not* been "so processed that it be [is] removed from its crude or primary state * * * . * * * an article will not be classified as 'manufactured' by reason of its having been subjected to a manufacturing process designed solely to prepare the article for shipment, even though such preparation incidentally advances the article for its intended use." *Charles H. Demarest, Inc.* v. *United States*, 44 CCPA 133, 137, C.A.D. 650. The imported horsehair prior to exportation was merely cleaned with kerosene and segregated from a mass of horsehair and placed into small bundles represented by plaintiff's exhibit 1. It appears to be "raw" horsehair.

In discussing paragraph 1541(a) under which the involved merchandise was classified, the U.S. Tariff Commission Summary of Tariff Information, volume 15 (Washington 1948), part 8, at page 14, contains the following:

*Violin bow hair is horsetail hair about 30 inches long, dressed for violin bows. Dressing involves, in addition to cleaning, matching for length and texture and gathering the ends together in wax. Natural or bleached white hair is generally used for all types of bows,* although black hair is sometimes used for bows of bass viols. Bow hair is exclusively horsetail because, when rubbed with rosin, horsetail hair will vibrate the strings of violin-type instruments; synthetic fibers do not have this characteristic. Statistics on the amount of violin bow hair produced in the United States are not available. It is believed that *most of the violin bow hair used in this country is dressed of imported raw hair.* [Emphasis supplied.]

Referring to paragraph 1688 under which the importer claims, the U.S. Tariff Commission Summary of Tariff Information, volume 16, free list (Washington 1950), part 3, at page 86, states:

This summary covers unmanufactured horse mane and tail hair, * * *. Such hair * * * is commonly referred to as horsehair."

\* \* \* \* \* \* \*

Horsehair is commonly designated as "raw" or "dressed." *Raw horsehair is cut hair or combings, generally fumigated or washed, classified roughly as to color and length, but not combed or drawn.* Dressed horsehair is horsehair which has been fumigated, washed, the root-ends placed together, drawn (sorted as to length), combed, and sometimes subjected to other processes of dressing. * * * [Emphasis supplied.]

It is apparent from the foregoing "comment" by the U.S. Tariff Commission that the imported horsehair, of which exhibit 1 is representative, *does not come* within the above language for "Violin bow hair" under paragraph 1541(a). On the other hand, it is also clear that exhibit 1 *does come* within the above language for "horsehair" or

"Hair of horse" under paragraph 1688 as "raw horsehair * * * generally fumigated or washed, classified roughly as to color and length, but not combed or drawn," which necessarily requires the procedures thereon heretofore noted before exhibit 1 may be considered as "Violin bow hair." After importation, and after the processing described in the record, the imported horsehair, represented by exhibit 1, then and only then reaches the stage of unfinished violin bow hair such as exhibit 3, and as finished violin bow hair such as exhibit 4.

On this record the imported merchandise is "Hair of horse * * * cleaned or uncleaned, drawn or undrawn, but unmanufactured, not specially provided for," as claimed by the plaintiff and is free of duty under paragraph 1688, Tariff Act of 1930, as originally enacted.

The protests are, therefore, sustained. Judgment will be entered accordingly.