(C. D. 1824)

AUTORIDAD DE TIERRAS DE PUERTO RICO *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 21, 1956)

*Ramon Gandia Biscombe* for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Autoridad de Tierras de Puerto Rico, plaintiff herein, imported 50 aluminum-welded, watertight tanks of 250-gallon capacity each, from Hayes Durham Forgings, Ltd., Montreal, Canada.

The collector of customs at the port of San Juan, P. R., classified the merchandise in paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, as articles or wares, not specially provided for, in chief value of aluminum, and duty was imposed thereon at the rate of 22½ per centum ad valorem.

It is the claim of plaintiff that the tanks in controversy should be classified as cylindrical tanks of the type provided for in paragraph 328 of said act (19 U. S. C. § 1001, par. 328), as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T. D. 52373, and the Presidential proclamation thereto, 85 Treas. Dec. 64, T. D. 52423, and subjected to duty at the rate of 12½ per centum ad valorem.

The pertinent text of the statutes, above referred to, reads as follows:

Paragraph 397, as modified, *supra*—

Articles or wares not specially provided for, * * *:
    Composed wholly or in chief value of * * * aluminum * * * but not
    plated with platinum, gold, or silver, or colored with gold lacquer:

        *        *        *        *        *        *        *

        Other * * *_____ 22½% ad val.

Paragraph 328, as modified, *supra*—

Cylindrical and tubular tanks or vessels, for holding * * * liq-
uids, * * *_____ 12½% ad val.

At the trial, three exhibits were introduced as follows:

Exhibit 1—Copy of the design of the tanks in controversy, prepared by the Land Authority, pursuant to plaintiff's specifications.

Exhibit 2—Drawing, designed to show how a cylinder is produced.

Exhibit 3—Piece of wood, identified by a witness as an "oblique circular cylinder."

After the case had been submitted for decision, adversary counsel, at the invitation of the court, produced a photograph of one of the tanks. Appropriate steps were then taken to have the photograph received in evidence, and it is marked "Illustrative Exhibit A."

In support of its contention that the tanks in controversy are cylindrical tanks, plaintiff introduced the testimony of Jose D. Morales, a professor of mathematics for more than 30 years in the department of mathematics at the University of Puerto Rico, and, in rebuttal, the testimony of Eduardo Girod, an engineer in the employ of the Puerto Rico Land Authority, with 23 years' experience, having 5 licensed engineers and 80 to 100 mechanics under his supervision.

Defendant called as its witnesses:

Jose R. Carreras, a mechanical engineer with 15 to 20 years' experience as chief engineer of Sucesores de Abarca, Inc., and Abarca Warehouses Corp., in the business of machine shops foundry works and steel plate and structural steel fabrications.

Alfred Phillips Thomson, an engineer with worldwide experience and presently operations manager of the Shell Co. of Puerto Rico, Ltd.

William Barondess, a contractor in the mechanical engineering business for 45 years, who has had experience in buying, installing, and using tanks.

Gilberto Bas, chief engineer of the design department of the Porto Rico Iron Works, which manufactures and sells thousands of tanks.

Jaime Escudero, a licensed mechanical engineer, assistant to the chief engineer of the Porto Rico Iron Works, and who also had worked for Sucesores de Abarca, said to be the largest foundry in the Caribbean area.

Plaintiff, in its brief, states the issue as follows:

Plaintiff's contention is that the 50 aluminum welded water-tight tanks of 250 gallon capacity each, imported by it, are cylindrical tanks, * * *.

The brief also contains the following statement by plaintiff:

There is no doubt, that the tanks imported by the Plaintiff are known *in* the trade as *"elliptical tanks"* and that tanks, a cross section of which at a right angle to its axis is a circle, are known *in the trade* as *"cylindrical tanks"*, but the latter are also known *in the trade* as *"circular tanks"*. * * * [Italics quoted.]

The issue, therefore, resolves itself into the legal proposition whether or not the subject tanks are cylindrical tanks, within the meaning of said paragraph 328.

It is the contention of plaintiff that the provision for "cylindrical and tubular tanks or vessels," as used in said paragraph 328, has been given a very broad scope by the courts, citing *United States* v. *Bene*, 6 Ct. Cust. Appls. 523, T. D. 36145, in support of that statement. The court was there concerned with the dutiable classification of certain sheet-iron drums, containing binoxide of barium. It stated that some of the drums were barrel shaped, while others were tubular or

right cylinder in form. In the course of its opinion, the court observed:

* * * It is true that the large drum is barrel shaped and therefore not a right cylinder in form. * * *

But, the court further pointed out that—

* * * A barrel, however, is defined to be a cylindrical wooden vessel (Oxford Dictionary), a vessel or cask of a cylindrical form, generally bulging in the middle, usually made of wooden staves bound together with hoops, and having flat parallel heads (Century Dictionary), an approximately cylindrical vessel, usually slightly bulging in the middle, generally made of wooden staves held together by hoops (Standard Dictionary). * * *

Accordingly, the court concluded:

* * * A barrel-shaped drum may, therefore, we think, be properly regarded as a cylindrical vessel.

Plaintiff relies upon the testimony of Dr. Morales, a civil engineer and head of the department of mathematics of the University of Puerto Rico, and of Mr. Girod, a mechanical engineer, employed by plaintiff. Based upon mathematical principles and analytical geometry, they were of the opinion that an elliptical tank was an elliptical-cylindrical tank.

Counsel for plaintiff, in his brief, has shown commendable zeal and studious effort in an endeavor to establish as a matter of law that the elliptical tanks in controversy are within the class of cylindrical tanks provided for in paragraph 328.

It is a basic principle of customs law that the commercial and common meanings of terms used in a statute are the same, in the absence of convincing proof to the contrary.

Also, it is elementary that tariff statutes are couched in terms of common speech rather than in those of the scientist—the chemist, metallurgist, or mathematician, for instance.

The provision for cylindrical tanks in paragraph 328 is free from doubt or ambiguity and should be interpreted in the light of the common, ordinary meaning of the words used by the Congress in framing the paragraph, unless we are satisfied that defendant has established a different commercial meaning.

As an aid to our understanding of the common meaning of the word "cylindrical," we quote the following definitions from some well-known lexicographical authorities:

Funk & Wagnalls New Standard Dictionary:

cylindrical * * * a. Shaped like a cylinder; having a surface similar to a cylinder or a section of a cylinder. * * *

cylinder, n. 1. A solid whose curved bounding surface is generated by the motion of a straight line at a given angle around two equal circles in parallel planes, the two circles forming the remainder of the boundary: called a *right cylinder* when the line is at right angles to the planes, an *oblique cylinder* when it is not; in the higher geometry, applied to any curved surface generated by the

motion of a straight line remaining parallel to itself and constantly intersecting a curve.  **2.**  *Mech.*  Any cylindrical portion of a machine, especially if hollow, and proportioned so that the length somewhat exceeds the diameter.  \* \* \*

Webster's New International Dictionary:

**cylindrical** \* \* \* Relating to, or having the form or properties of, a cylinder.

**cylinder** \* \* \* **1.**  *Geom.*  **a**  The surface traced by one side of a rectangle rotated round the parallel side as axis.  **b**  The volume generated by a rectangle so rotated.  **c**  The surface traced by any straight line, called *generatrix* or *element*, moving parallel to a fixed straight line.  **d**  The space bounded by any such surface and two parallel planes cutting the elements.  A plane section perpendicular to any element is a *right section*; the bounded volume is a *right cylinder*; if a right section be a circle the cylinder is *right-circular*; any curve that the generatrix constantly meets is a directrix.  \* \* \*

Our conception of the common, popular meaning of the term "cylindrical," buttressed by the definitions above quoted, and by the testimony of plaintiff's witnesses, leaves no doubt in our minds that an elliptical tank does come within the field of cylindrical tanks of the kind which are intended by the Congress to be embraced within the provisions of paragraph 328.

We are aided in this conclusion also by an examination of the photograph—illustrative exhibit A—which has afforded us a better comprehension of the shape and design of the subject tanks than was to be gained from the pencil drawings—exhibits 1 and 2. Apparently, the tanks are similar in design and pattern to the much larger tanks commonly seen on our streets and highways used for the transportation of milk, oil, or gasoline.

Defendant, however, contends that the subject tanks are not commercially known as cylindrical tanks.  In our opinion, the testimony introduced on behalf of defendant falls far short of establishing a meaning of the term "cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material," in the trade and commerce of the United States different from its common meaning.

Defendant's witnesses were primarily mechanical engineers and contractors well informed in the production, construction, and uses of tanks, but lacking in those qualifications necessary to establish a uniform, definite, and general meaning of the term cylindrical and tubular tanks or vessels, for holding liquids, different from the common meaning of those words, as they appear in said paragraph 328.

We are reminded of the observation of our appellate court in *Jas. Akeroyd & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 440, 443, T. D. 42641, that "Commercial designation is a thing often claimed in customs litigation and rarely established."

A liberal attitude toward the provision for cylindrical and tubular tanks or vessels in an earlier tariff act was indicated in *United States* v. *Bene, supra*.

We find nothing in the statutes or in the definitions to which our attention has been drawn which persuades us that, in order to come

within the term "cylindrical tanks," the articles must be precisely circular in cross-section and not oval or elliptical. While the tanks in controversy are elliptical in design, they respond to the common meaning of a cylinder, in that the directrix and the generatrix lines are in the proper order.

The provision for cylindrical tanks is unqualified, except as to use, and we see no reason for excluding from that provision elliptical-cylindrical tanks for holding liquids.

Upon the record and for the reasons above stated, we find and hold that the tanks in controversy are properly classifiable as tanks of the kind made dutiable in said paragraph 328, as alleged by the importer. That claim in the protest is sustained, and judgment will be entered directing the collector of customs to reliquidate the entry accordingly.