56 CCPA

**KURTZ IMPORTING CO., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5314.**

United States Court of Customs and Patent Appeals.

Feb. 27, 1969.

(Joshua M. Davidson, Allan H. Kamnitz, New York City, of counsel) Siegel, Mandell & Davidson, New York City, for appellant.

Edwin L. Weisl, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Owen J. Rader, New York City, for the United States.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and KIRKPATRICK,* Judges.

WORLEY, Chief Judge.

This appeal requires us to determine whether the Customs Court erred in dismissing the importer's protest to the classification of certain glass beads in imitation of alabaster, known as "alabaster beads," imported from Japan on strings, as unfinished jewelry under paragraph 1527(a) (2) of the Tariff Act of 1930, as modified by T.D. 51802 and T.D. 51939.[1]

The importer claims classification under paragraph 1503 of the Tariff Act,

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Kurtz Importing Co. v. United States, 59 Cust.Ct. 464, C.D. 3193.

as modified by T.D. 54108, as beads, not specially provided for.

The statutes read, in pertinent part:

Paragraph 1527(a) (2) of the Tariff Act of 1930, as modified by T.D. 51802 and T.D. 51939:

Jewelry, commonly or commercially so known, finished or unfinished (including parts thereof):

\* \* \* \* \* \*

All other, of whatever material composed, valued above 20 cents per dozen pieces \* \* \* 55% ad val., but not less than 50% of the amount payable on the basis of the duty "existing" (within the meaning of Section 350, Tariff Act of 1930, as amended by the Act of July 5, 1945) on January 1, 1945, if the article were not dutiable under paragraph 1527, Tariff Act of 1930.

Paragraph 1503 of the Tariff Act of 1930, as modified by T.D. 54108:

Spangles and beads, including bugles, not specially provided for ------------------------15% ad val.

\* \* \* \* \* \*

*Provided,* That the rate on spangles and beads provided in this paragraph shall be applicable whether such spangles and beads are strung or loose, mounted or unmounted

\* \* \*

Only the importer introduced evidence. That evidence includes testimony of Murray Kurtz of Kurtz Importing Company, George E. Ame of the Hudson Pearl Company, and Henry R. Krack of Marvella, Inc. The Kurtz firm is the importer, Marvella a jewelry manufacturer which purchased the goods from Kurtz, and Hudson a processor which pearlized the beads for Marvella. Also in evidence are several exhibits, some representing the importations at different stages in their processing.

It appears that the merchandise was ordered by Kurtz according to specifications of Marvella for delivery to Hudson. The beads were manufactured in Japan from imitation alabaster glass rods and placed on silk strings in graduated order with the largest bead located in the middle of the strand, and the bead sizes then tapering evenly toward both ends. Two sizes of bead strands were imported: 17 inch strands of beads with diameters ranging from 3 to 8 millimeters on 29 inch strings, and 20 inch strands of beads with diameters ranging from 6 to 9 millimeters on 32 inch strings. Each size was grouped in bunches of a dozen strands. In imported condition, the strands of beads are not sold to ultimate consumers.

On delivery of an importation to Hudson, the beads are stripped from the strings onto wires set in a frame, retaining the same graduated order. They are then spaced, cemented in place, and dipped in a plurality of pearlizing solutions. Subsequently, the pearlized beads are stripped off the wire onto a new string of silk, cotton or nylon. Exhibit 4, which represents the merchandise after it has been processed at Hudson and is ready for shipment to Marvella, consists of strands of pearlized beads strung on individual cords, in graduated order as in their imported condition.

A witness estimated that Marvella uses less than 50 percent of the pearlized beads in the form received from Hudson as single-strand graduated necklaces after occasionally removing a bead or two from the ends, and after tipping and clasping the ends. The remaining strands, with or without the removal of an end bead or beads, are variously processed into two to six strand necklaces, necklaces with "French Knots" tied between the beads, and necklaces ornamented with rhinestone or metal ornamentation as, for example, by an ornament placed between sections of the beads. Certain of the uses, including the "French Knot" ornamentation in particular, require a further restringing on longer string. However, the graduated order of the beads is retained. The beads removed from the ends are saved, "resieved" for size and strung on a wire so that they can be used in earrings, pins, or clasps for bracelets.

The Customs Court found the "clear implication" of the testimony to be that the imported beads, pearlized and restrung as in Exhibit 4 except for the removed end beads, are processed "either into single-strand necklaces by tipping and clasping or into various other forms of ornamented and/or multiple-strand necklaces." It further regarded it as recognized that, where the determination of the importer to further rework or ornament an article is one of choice and not necessity, such further manipulation will not affect the classification, citing United States v. Fred Frankel & Sons, 52 CCPA 81, C.A.D. 862; Hecht Pearl Co. v. United States, 18 CCPA 171, T.D. 44375. The court concluded that, although no actual restringing occurred in *Frankel*, the facts here bring the case within the rationale of that decision.

In *Frankel* merchandise similar to that here was held classifiable as unfinished jewelry. The merchandise consisted of 15, 16, 17 and 21 inch strands of graduated imitation alabaster beads strung on rayon cords of such length that there was an excess of about 60 inches of cord in each string of beads. The strands were tied together in bunches of a dozen. The goods were unsalable in their imported condition, but were pearlized by a process involving dividing the beads in each strand into two portions, moving those portions to the respective ends of the cords and then dipping the beads into pearlizing solutions. The beads were then stripped back to the clean center portions of the strings and the end portions of the strings removed. Subsequently, the strung beads were provided with tips and clasps and sold as single strand necklaces or with the removal of some end beads, made into multi strand necklaces.

The *Hecht* decision held certain articles made of imitation pearl beads to be classifiable as unfinished jewelry. The importations were in many instances restrung and reworked before being sold, the restringing being for the purpose of adding an ornament or clasp or bar of some kind to complete the necklace. The court stated:

We are satisfied from the whole record in the case that the merchandise which is restrung or reworked is so treated by the importer, not because it must be in order to put it in condition for sale as an article (except, of course, any item that might be damaged) but as a matter of choice, and an election on the part of the importer to do something additional to an importation, after receiving it, does not affect its classifiable status. This status must be determined upon the basis of its condition as and when imported.

The importer emphasizes the differences between the facts here and those in *Frankel*. Noting that the present beads were stripped from the original string onto a wire before pearlizing, and stripped from the wire onto a new string afterwards, the importer urges that the stripping from the wire to any string, even the original, amounts to an actual restringing which is not optional. It also considers it significant that the "end beads" obtained in "draping" (determining the length of the necklace strands) are saved and used in making pins, earrings and pearl clasps for necklaces and bracelets. The fact that some of the strands of beads are restrung in making necklaces having "French Knots" and necklaces having ornaments intermediate the beads is regarded by the importer as material here. Thus, it notes that "85 percent of the merchandise is used to make necklaces of one or more strands with the addition or subtraction of 'end beads'," but contends that "there is nothing about the composition of Exhibit 4 that dedicates it to use as any one particular item of jewelry." According to the importer, the foregoing considerations bring the present case "squarely within" the decisions in United States v. Emrich & Schorsch, 13 Ct.Cust.Appls. 199, T.D. 41053, and United States v. Wanamaker, 14 Ct.Cust.Appls. 285, T.D. 41888.

We think it clear that neither *Emrich* nor *Wanamaker* is controlling here. Beads which were graduated and strung on strings of necklace length were held to be beads rather than unfinished jewelry in *Emrich*. However, those beads were restrung and reassembled after importation and, what is particularly significant, there was nothing in the evidence showing that the beads after being restrung were "the same in number and arrangement." In *Wanamaker*, the evidence with regard to imported strings of crystal beads, held not to be unfinished jewelry, was that the cord holding the beads was replaced because it was "not good enough and not heavy enough" and "would not permit a knot in it," that the strings of beads were frequently cut up to make smaller items such as throat necklaces, bracelets and earrings, and that the graduated arrangement was sometimes changed.

We think the facts here more closely resemble those in *Frankel*, and that the aspects in which they differ from *Frankel* are not such as to warrant a different result. Thus, in both cases, the imported strands of beads were ordered graduated in size and in the lengths selected because they were to be made into necklaces. The strands of pearlized beads received by Marvella from Hudson, exemplified by Exhibit 4, are in essentially the same condition as the *Frankel* strands were after being pearlized. Moreover, those strands are suitable for tipping and clasping to make single and multi-strand imitation pearl necklaces as was done with the *Frankel* strands, and

it appears that 85 percent of the present strands are processed in that manner to make similar necklaces. The imported strands of beads here are thus committed not only to making the pearlized strands like Exhibit 4 to which all are converted in an intermediate stage, but also to the ultimate making of necklaces as in *Frankel*.

The fact that the beads are disposed on different strings than the original, and that the remaining 15 percent of the strands might be subjected to additional operations to make necklaces with "French Knots" or other ornamented necklaces, is not controlling of the classification. As the court observed in *Frankel*, "[w]here the ultimate destiny as necklaces is clear, we do not see that it is of much importance just which part of the manufacturing process remains to be done." [2]

One last difference from *Frankel* is that the record shows that the "end beads" removed from the strands in the present case are saved and used in making other items such as earrings, while the *Frankel* record apparently did not show that any use was made of beads similarly removed. Such use, in our opinion, does not affect the classification of the imported merchandise in this case.

Since we find no reversible error, the judgment is affirmed.

Affirmed.

KIRKPATRICK, J., took no part in the decision of this case.

---

2. The importer cites United States v. Harding Co., 21 CCPA 307, T.D. 46830; Harding Co., et al. v. United States, 23 CCPA 250, T.D. 48109; American Import Co. v. United States, 26 CCPA 72, T.D. 49612 for the proposition that "a material dedicated to but one use is not *ipso facto* that article in its unfinished state." In the *Harding* cases, 100 foot lengths of material suitable for making automobile brake linings were held to be material for making brake linings and not parts of automobiles (brake linings). Those cases are readily distinguished from the present case since the material was not cut in even the approximate lengths of individual brake linings. The *American Import* case involved 60 foot lengths of silk gut material that might be cut into lengths for making fishing leaders or the like and is similarly distinguishable.