57 CCPA

**F. W. MYERS & CO., Inc., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5349.**

United States Court of Customs
and Patent Appeals.

May 14, 1970.

Barnes, Richardson & Colburn, New
York City, attorneys of record, for ap-
pellant. James H. Lundquist, Peter J.
Fitch, New York City, of counsel.

William D. Ruckelshaus, Asst. Atty.
Gen., Andrew P. Vance, Chief, Customs
Section, Robert E. Burke, New York
City, for the United States.

Before RICH, Acting Chief Judge,
BALDWIN and LANE, Judges, and
MATTHEWS, Senior Judge, United
States District Court for the District of
Columbia, sitting by designation.

BALDWIN, Judge.

This is an appeal from the decision
and judgment of the United States Cus-

toms Court, Third Division[1] overruling appellant's protests against the classification and assessment of duty of merchandise, destined for ultimate use as a railroad tank car, at the rate of 18 percent ad valorem under item 690.15, Tariff Schedules of the United States (TSUS). Appellant claims that the merchandise is properly dutiable at the rate of 10 percent ad valorem under item 640.10 TSUS.

The relevant TSUS provisions are, in material part, as follows:

Schedule 6, Part 6, Subpart A:

Item 690.15 Railroad and railway rolling stock:

> Passenger, baggage, mail, freight and other cars, not self-propelled . . . . . . .18% ad val.

Schedule 6, Part 2, Subpart A:

*Subpart A headnotes:*

1. The provisions in this subpart for containers include such containers whether or not equipped with fittings such as tops, valves, level gauges, and monometers. * * *

* * * * * *

Item 640.10 Metal pressure containers designed and used for the transport and storage of compressed gases:
* * *

> Other . . . . . .10% ad val.

*General Headnotes and Rules of Interpretation:*

10. *General Interpretative Rules.* (c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; * * *.

* * * * * *

(h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished.

* * * * * *

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

The evidence adduced on behalf of the plaintiff below, the United States offering no evidence, consists of the testimony of an officer and employee of Union Tank Car Company, the ultimate consignee of the imported merchandise, drawings and specifications of the involved articles, both in an unfinished and completed state, and photographs of the article, in an unfinished as well as a finished state. There appears to be no dispute as to the essential facts disclosed by the record which we deem to be fairly and comprehensively stated by the Customs Court as follows:

> The involved articles are partially manufactured in Canada from raw materials exported from the United States, and in accordance with drawings and specifications, furnished by Union Tank Car Company of Chicago, Illinois, a manufacturer of railway tank cars. The most prominent structural member of the imported article consists of a cylindrical 33,500 gallon L.P.G. (Liquid Petroleum Gas) tank fabricated from carbon steel. According to the testimony of Alvin A. Bowcutt, Union's operations manager, a number of sub-assemblies and at least one assembly are welded to the tank at the time of its manufacture in Canada and prior to "stress relieving" which, in the case at bar, took place in Canada. Such parts consist of brackets for catwalk supports, safety railing, running boards, and dome platform, and brackets and support for hand brakes, clips for air brake lines and tank, and the assembly for couplers.

Also shown on the drawings of the unfinished article * * * in enlarged detail are the support for the trainline—shown in association with the brake pipe support and pipe anchor—and truck bolsters and bolster saddles affixed at both ends of the

---

1. F. W. Myers & Co., Inc. v. United States, 62 Cust.Ct. 312, C.D. 3751.

tank. And one of the truck bolsters is also visible in the photograph of the unfinished article * * *.

* * * the involved articles are brought into this country over railroad lines on truck wheels which, although never permanently attached to the tanks, are generally the same truck wheels with which the article is equipped when manufacture is complete. There are times, however when the truck wheels by means of which the imported article moves over the railroad lines into this country are "borrowed", as it were, for transportation purposes only.

* * * after importation, equipment installed on the articles in question consists of the safety devices, the trainline, the brake lines, the ladders, the top platforms, all the valve control assembly on the top, the top hatch cover over the gauge equipment, the brakes, including the A. B. brake unit, etc., and the air reservoir.

In the course of its opinion, the Customs Court stated that the most prominent structural member of the imported article, the 33,500-gallon L.P.G. tank responds *per se* to the language of item 640.10 and that the finished tank car responded to the language of item 690.15, and addressed its consideration to whether the "tank" had become an "unfinished tank car" as of the time of the importation so as to be removed from classification under item 640.10 and brought within the ambit of item 690.15.

In assessing the factual aspects presented, the court was not persuaded that welding to the tanks, prior to importation, of subassemblies, safety railings, running boards, and dome platform was critical to classification of the article inasmuch as it was feasible that such upper parts would ordinarily be included in a L.P.G. tank constructed for use as a stationary storage container, or to provide means of transportation of liquids under pressure other than by rail.

In holding, however, that the evidence clearly established the imported merchandise to be unfinished railroad or railway rolling stock of a kind within the language of item 690.15 and that in view of the provisions of Rule 10(h) of the General Interpretative Rules to the traffic schedules providing that "a tariff description of an article covers such article * * * whether finished or not finished," the article could not be properly excluded under item 690.15 merely because it is in an unfinished state, the court stated:

We * * * think that the welding to the tank prior to importation of the lower sub-assemblies for hand brakes, air brake lines and tank (trainline), and the assembly for couplers, and particularly, the affixation of the truck bolster assembly, have significance in determining the character of the article even in an unfinished state. These particular structural members are all integral parts of a railroad tank car, and the incorporation of such parts in a cylindrical tank can hardly be said to advance the tank to any stage of completion as a container. If anything, the addition of such parts makes the tank something more than a container, for such parts would be superfluous as appendages to a "container." And with the addition of the truck bolster assembly to the tank in the initial stage of manufacture, it would make no difference whether the imported article thus adorned is brought into this country on its own truck wheels, or whether it comes in on "borrowed" truck wheels. In either case movement of the article over the rails is made possible only by the presence of the structural mating part (bolster) necessary to accommodate the truck wheels.

In our view the issue posed for resolution here is whether appellant has proved that the subject merchandise is not an unfinished railroad or railway car within the scope of item 690.15 TSUS. The meaning of the term "unfinished" in the tariff sense was stated in American Import Co. v. United

States, 26 CCPA 72, 74, T.D. 49612 (1938) as follows:

> It has long been the generally accepted rule that a thing may be classified for tariff duty purposes under an *eo nomine* provision for the article unfinished if that thing has been so far processed towards its ultimate completed form as to be dedicated to the making of that article or that class of articles alone.

■ As we assay the decision below, it, in essence, determines that the merchandise in issue had been so advanced toward final completion as a railroad car as to be. dedicated to that purpose, and consequently was an unfinished railroad tank car properly classified under item 690.15 TSUS. In our view the record amply supports this conclusion.

There were a number of devices or appurtenances, pointed out by the court below, which were designed for use in connection with a railway tank car but of themselves were not sufficient to dedicate the 33,500-gallon tank as a railroad tank car, inasmuch as they may be used with and serve their functions on a tank when used for stationary storage or a purpose other than as rolling stock. Dedication to use as a railroad tank car was, in our judgment, achieved with the application of processes and permanent apparatus consistent only with such use. We can envision no other use of the various elements imported for air brake apparatus, items for the assembly to which the railway couplers were to be attached and the large supports which allow the tank to rest on the wheel assemblies designated as truck bolsters. These parts were permanently welded to the tank to fuse them into the structure of the tank and treated through a process of "stress relieving" so as to prevent any pressure faults caused by welding.

The record reveals that each of the imported articles were transported into the United States on wheel sets manufactured in this country, which sets ordinarily remained with the tank car after it was completed. Viewing the merchandise as imported, it is our opinion that it constituted rolling stock with the appearance and most of the apparatus of a completed railroad tank car, sufficiently advanced toward completion as a railroad tank car that it was dedicated to that use and properly classified as an unfinished railroad tank car under item 690.15 by virtue of Interpretative Rule 10(h) TSUS.

We have noted appellant's reliance on Autoridad de Tierras de Puerto Rico v. United States, 37 Cust. Ct. 204, C. D. 1824 (1956), but are not persuaded that it has significant application here. As we gather it, the issue in *Autoridad* related to the classification of certain 250-gallon elliptical tanks made of aluminum, not specially provided for, in paragraph 397, Tariff Act of 1930, and was resolved in the holding that "elliptical" tanks came within the provision for "cylindrical" tanks in paragraph 328, Tariff Act of 1930. So, the issue in essence dealt with the common meaning of the words "cylindrical" and "elliptical." In no material sense was the merchandise therein involved similar to that which concerns us here.

■ Appellant argues that if the language of item 640.10 embracing "containers *designed* and *used* for the transport and storage of compressed gases" is to have any meaning, the containers included therein must be designed for either railway equipment, truck equipment, or other transportation vehicles. As we assess the scope of item 640.10, it is limited to containers designed for the moving and storage of compressed gases. A container embraced thereby may well be designed for transportation purposes and contain features facilitating mobility but when, as here revealed by the record, such fixtures, assemblies and appurtenances are added thereto and built therein for the sole purpose of adaptation to and use in rail transportation, it ceases to be embraced by the scope of item 640.10. In this connection our attention is directed to Headnote 1, Schedule 6, Part 3, Subpart A, TSUS, wherein it is provided that the 640.10 containers

may be "equipped with fittings *such as* tops, valves, level gauges and mono-meters" (emphasis supplied). We think it apparent that these devices are designed for the protection and control of the contents of the containers and constitute an expression of congressional intent that the basic container may contain these devices. The clear implication arising therefrom is that it may not contain devices designed for some other purpose. See United States v. Nichols Copper Co., 29 CCPA 186, 191, C.A.D. 190 (1941). Hand brakes, railway wheel assemblies, air brakes, trainlines and railroad coupler assemblies would, in our opinion, remove the merchandise beyond the scope of item 640.10 TSUS.

■ Appellant advances the argument that having determined that the tanks were provided for by the language of item 640.10, the court makes the assumption that if the merchandise is also includable in item 690.15, that provision will control to exclusion of the terms of item 640.10. On this basis appellant invokes the doctrine of relative specificity as set forth in Rule 10(c) of the Interpretative Rules. We do not so interpret the decision of the Customs Court. It is clear from the opinion below that it did not state that the entire tank unit, *as imported,* with its detailed railway car devices, responds to the language of item 640.10. The language is limited to the tank *per se.* The holding is clear that the merchandise *as imported* does not come within the purview of item 640.10 and that item 690.15 was applicable thereto. We are not persuaded that the doctrine of relative specificity, as contended by appellant, has application here.

We have considered the cases cited and assessed the arguments and contentions advanced by appellant and we are not persuaded that the Customs Court committed reversible error in holding that the imported merchandise is not a mere tank or container envisioned by item 640.10, but has been so far advanced and dedicated as to bring it into

the category of an unfinished railway tank car properly classifiable under item 690.15 TSUS.

We think it indisputable that the merchandise, as imported, rolls into this country on railway tracks and, generally, on its own permanent railway wheels, having attached thereto considerable apparatus permanently installed for the sole purpose of rendering the importation a completed railway car.

The judgment of the Customs Court is, therefore, affirmed.

Affirmed.

LANE, J., concurs in the result.