**AUTHENTIC FURNITURE PROD-
UCTS, INC.**

v.

**UNITED STATES.**

C.D. 4362; Protests 68/62623–104377, etc., against the decision of the district director of customs at the port of Los Angeles.

United States Customs Court,
First Division.
June 30, 1972.

Stein & Shostak, Los Angeles, Cal. (Arthur E. Schwimmer, James F. O'Hara, New York City, and Leonard M. Fertman, Los Angeles, Cal., of counsel), for plaintiff.

Harlington Wood, Jr., Acting Asst. Atty. Gen. (Velta A. Melnbrencis, New York City, trial attorney), for defendant.

Before WATSON, MALETZ, and RE, Judges.

RE, Judge:

The legal question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported by the plaintiff from Japan in 1968. The merchandise, invoiced as bunk beds, consists of unassembled pieces of wooden bunk beds, that is, posts, headboards, footboards, ladders and guardrails.

The customs officials classified the merchandise as parts of furniture, under item 727.40 of the Tariff Schedules of the United States, and assessed duty at the rate of 15 per centum ad valorem. Plaintiff has protested the classification and claims that it is properly and legally classifiable as furniture, under item 727.35 of the tariff schedules, and should therefore be assessed with duty at the rate of 9 per centum ad valorem.

Plaintiff bases its claim upon the definition of "furniture" found in subpart A, headnote 1 in schedule 7, part 4 of the tariff schedules, and General Interpretative Rule 10(h) of the tariff schedules. Specifically, the tariff definition of "furniture" expressly includes "beds", and Rule 10(h), in effect, provides that a tariff description of an article covers that article, whether or not it is assembled, and whether or not it is finished.

Although "furniture" is defined in rather general terms, there is no doubt that the definition includes bunk beds. Were it conceded that the imported merchandise, in fact, consists of "bunk beds" there would be no question as to its proper classification. The question presented, however, stems from the fact that a complete and usable bunk bed includes and requires certain additional parts that are not contained in the imported unassembled merchandise.

The defendant urges that the importations are neither "beds" nor "bunk beds" because they do not contain a "bedframe and a bottom." It calls the court's attention to the record in this case that reveals conclusively that the imported units "are not saleable and usable as bunk beds since they need siderails" which are supplied by a dealer subsequent to importation. The defendant also indicates that "without siderails, the imported pieces cannot even be assembled so that they will stand in an upright position." It adds that "even with siderails the importations could not serve as pieces of furniture on or in

which one may lie down and sleep because they have no bottoms—canvas, mesh, spring, or otherwise. At the very minimum, slats or springs are needed to support a body or a mattress." (Defendant's brief p. 5) The defendant consequently contends that the imported units are merely *parts* of bunk beds, and, therefore, have been correctly classified by the customs officials.

For ready reference, the pertinent or competing provisions of the Tariff Schedules of the United States may be set forth as follows:

Schedule 7, Part 4, Subpart A.—Furniture, Pillows, Cushions, and Mattresses

"Furniture, and parts thereof, not specially provided for:

\* \* \* \* \* \* \*

Of wood:

\* \* \* \* \* \* \*

Other:

\* \* \* \* \* \* \*

727.35 Furniture other than chairs .... 9% ad val.
727.40 Parts of furniture ..........15% ad val."

*"Subpart A headnote:*

1. For the purposes of this subpart, the term *'furniture'* includes movable articles of utility, designed to be placed on the floor or ground, and used to equip dwellings, \* \* \* even though such articles are designed to be screwed, bolted, or otherwise fixed in place on the floor or ground; and \* \* \* seats and beds, \* \* \* even though designed to be fixed to the wall or to stand one on the other; \* \* \*."

"10. *General Interpretative Rules.* For the purposes of these schedules—

\* \* \* \* \* \*

(h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished."

At the trial the plaintiff introduced two exhibits and called two witnesses who testified on its behalf. Plaintiff's first witness was its president, and the second witness was its northern California sales representative. From the composite testimony of the witnesses the following has been clearly established:

1. that the pieces imported in an unassembled condition consist of a post, a headboard, a footboard, a ladder and a guardrail;

2. that they are assembled by the plaintiff and are sold to dealers such as Sears & Roebuck, Montgomery Ward, and others;

3. that the only pieces sold to the dealers are those imported by the plaintiff, and that they are sold to the dealers as a unit;

4. that the siderails that are not imported are necessary to make the unit saleable and useable to the ultimate consumer;

5. that the merchandise or unit imported by plaintiff does not include siderails, or mattress slats;

6. that the dealer adds the siderails and completes the bed for final sale to the consumer;

7. that the siderails support the mattress, and also join the headboard to the footboard by their respective posts;

8. that the imported pieces, without siderails, cannot be assembled so as to stand in an upright position.

Plaintiff, in its brief, has called the court's attention to a ruling of the Bureau of Customs that wooden bunk beds are classifiable under the claimed provision for furniture.

It is true that in T.D. 56184(41), 99 Treas.Dec. 298, the Bureau has ruled that wooden bunk beds are classifiable under the claimed provision for furniture. This, however, only highlights the issue, and the basic difference of view between the parties. The question would not have arisen had the imported merchandise consisted of all of the parts necessary to complete a bunk bed. Since it does not contain siderails and a bottom, neither the customs officials nor the defendant agree with plaintiff's assertion that the imported pieces are bunk beds classifiable under item 727.35 as furniture.

Defendant concedes that "if all the pieces necessary to make up bunk beds had been imported, they would be considered bunk beds and hence furniture for tariff purposes, even though they were unassembled or in a knocked-down condition upon importation." (Defendant's brief p. 7) It adds that the imported pieces are not only unassembled, "but in their totality they cannot make up bunk beds, or any kind of beds, since important and essential parts are missing", and that "without siderails and slats or springs, the importations cannot serve even as bedframes." (Ibid.) Hence, the defendant urges that, in order for the plaintiff to prevail in this action, it must prove that the imported pieces constitute "furniture" and not merely parts of furniture.

Plaintiff relies upon General Interpretative Rule 10(h) of the tariff schedules, and indicates that the rule does not enunciate a new concept in the tariff classification of unfinished articles. That the imported articles are unassembled creates no problem in their classification. The question presented, however, pertains to the effect of the rule, and the existing practice, upon the classification of unfinished or incomplete articles.

The legislative codification set forth in General Interpretative Rule 10(h) declares that "unless the context requires otherwise, a tariff description for an article covers such article whether assembled or not assembled, and whether finished or not finished." See Tariff Classification Study, Submitting Report, p. 19 (1960).

The "accepted rule" applicable to the classification of an "unfinished" article has been expressed as follows by the Court of Customs and Patent Appeals in the case of American Import Co. v. United States, 26 CCPA 72, 74, T.D. 49612 (1938):

"It has long been the generally accepted rule that a thing may be classified for tariff duty purposes under the *eo nomine* provision for the article unfinished if that thing has been so far processed towards its ultimate completed form as to be dedicated to the making of that article or that class of articles alone. Konishi Kotakudo Co. (Inc.) v. United States, 17 CCPA (Customs) 355, T.D. 43798; A. H. Ringk & Co. et al. v. United States, 16 Ct.Cust.Appls. 132, T.D. 42769; United States v. Cartier (Inc.), 15 Ct.Cust.Appls. 334, T.D. 42493; United States v. Schenkers, Inc., 17 CCPA (Customs) 231, T.D. 43669; Hecht Pearl Co. (Inc.) v. United States, 18 CCPA (Customs) 171, T.D. 44375; and United States v. Cohn & Rosenberger, Inc., 19 CCPA (Customs) 137, T.D. 45259."

In the *American Import Co.* case the issue pertained to the classification of so-called artificial gut, made of silk, and imported in 60-foot lengths. After being cut into suitable lengths and after loops had been tied at the ends, it was used as fishing leaders, casts or snells. The question presented was whether the merchandise had been properly classified as manufactures of silk, or whether it should have been classified as unfinished leaders or unfinished fishing tackle. In sustaining the classification as manufactures of silk, the court held that the mere fact the merchandise was chiefly used for leaders did not require that it be classified as "leaders, unfinished, or fishing tackle, unfinished".

The court stated:

"The mere fact that a thing has but one use does not require that it be considered as an article unfinished. If the material has been so far processed from the 'material' stage to a partly-completed article, then it loses its character as material and takes on the characteristics of the article for which the material was intended. Material may be a manufacture and at the same time be a material for another manufacture." 26 CCPA at 75–76.

It should be noted that the *American Import Co.* case dealt with the processing of material, and not parts of an unas-

sembled article. Cases such as Kurtz Importing Co. v. United States, 420 F.2d 746, 56 CCPA 59, C.A.D. 954 (1969), and United States v. Cohn & Rosenberger, Inc., 19 CCPA 137, T.D. 45259 (1931), also dealt with a "manufacturing process", and were not cases where a number of unassembled parts of an article were claimed to be classifiable as the article itself. *Kurtz Importing Co.* and the *Cohn & Rosenberger* cases dealt with unfinished jewelry.

In the *Cohn & Rosenberger* case, certain articles of bone, referred to as "loose bone roses" designed to be worn as jewelry "complete in themselves, with the exception of drilling the hole and attaching an appropriate fastening", were held dutiable as unfinished jewelry. 19 CCPA at 139. In that case the court stated that "the carved bone rose is a complete article, ready to wear, except for some means of attaching the same to the person or clothing of the wearer. It is finished with that exception, and the statute made specific reference to 'jewelry * * * finished or unfinished.'" 19 CCPA at 140.

In the *Kurtz Importing Co.* case the Court of Customs and Patent Appeals upheld the decision of the Customs Court which sustained the classification of certain "alabaster beads" as unfinished jewelry. The Customs Court relied upon several cases dealing with unfinished jewelry where the "destiny" of the jewelry was clear and only a part of the manufacturing process remained to be done. The cases cited in the *Kurtz Importing Co.* case are unlike the case at bar, for they too were decided on the principle that "where the determination of the importer to further rework or ornament an article is one of choice and not necessity, such further manipulation will not affect the classification * * *." 56 CCPA at 62. Additionally, the pertinent paragraph of the Tariff Act of 1930, under which the "alabaster beads" were classified, expressly provided for jewelry "finished or unfinished (including parts thereof)".

The most recent case on the subject of unfinished jewelry is Finn Bros., Inc. v. United States, 454 F.2d 1404, 59 CCPA, C.A.D. 1042 (1972). The principal question presented in the *Finn Bros.* case was whether the trial court had erred in finding that imported ivory roses were unfinished jewelry, and therefore, by virtue of General Interpretative Rule 10(h), properly classifiable under item 740.35 of the tariff schedules as jewelry. In affirming the judgment of the Customs Court, the Court of Customs and Patent Appeals stated:

> "Taking the importation in its condition when imported, and depending on the type of jewelry desired to be made, the only process needed to be applied is to secure the roses to an earring back or pin. We find that in its. imported condition the merchandise had been so far advanced beyond the stage of materials as to be dedicated to and commercially fit only for use as jewelry. Its status was that of unfinished jewelry or parts of jewelry and hence it is properly classifiable as jewelry." 454 F.2d at 1407.

The appellate court expressly noted that the provision for jewelry also specifically covered parts and concluded:

> "For emphasis, we think it bears repeating that the merchandise in issue, carved ivory roses, constitutes a complete entity except for the attachment of an earring back, hook or pin, for use as an earring or brooch, or necklace, bracelet, or pendant and therefore is unfinished jewelry, as held by the Customs Court, or parts of jewelry. In either case, classification under item 740.35 is proper." 454 F. 2d at 1407.

Clearly, therefore, cases which dealt with an additional manufacturing process for a substantially complete article, or which dealt with a tariff provision which also covered "parts", differ from the case at bar.

In the *American Import Co.* case the appellant-importer pointed out that a

holding that the merchandise was dutiable as a manufacture of silk, required that it be assessed at a higher rate of duty than the finished article itself. Although such a result seemed anomalous, and contrary to the general policy of Congress in preparing tariff acts, the court stated that it could not assume that Congress "had no sufficient reason for so doing." 26 CCPA at 76. The court quoted the following statement from the opinion of Chief Justice Taft in United States v. Stone & Downer Co., 274 U.S. 225, 244, 47 S.Ct. 616, 621, 71 L.Ed. 1013 (1927), which is equally applicable here:

"If the language of the statute is such that such results can not be avoided, of course it must be enforced accordingly. If Congress by its language has made a mistake, and so has failed in its purpose, this Court can not supply by its decision the omission of a necessary legislative provision to effect its purpose."

Here, under item 727.35 of the tariff schedules, "furniture" is dutiable at the rate of 9 per centum ad valorem. By virtue of item 727.40, "parts" of furniture are dutiable at the rate of 15 per centum ad valorem. This, however, does not appear to be a "mistake" on the part of Congress. It will be noted that the superior heading provides for "furniture, and parts thereof". It is followed by two inferior headings, or article descriptions. One pertains to "furniture", and the other expressly provides for "parts of furniture". Under such circumstances one can hardly infer a legislative mistake. Rather, the court would have to hold that the separate item for parts is an unequivocal and significant reflection of legislative intent. Consequently, to classify as furniture a substantially incomplete article, consisting only of parts, would render ineffectual the express provision for "parts of furniture".

This view finds support in the Tariff Commission's Summaries of Tariff Information, Vol. 4, p. 83 (1948) wherein it is stated that:

" * * * Parts of furniture are separate or random pieces which do not constitute a complete article. Neither knocked-down furniture nor furniture frames comprising the necessary number of pieces to make complete articles are reported as parts; they are reported as complete articles."

In the light of General Interpretative Rule 10(h), one may paraphrase the quoted language as follows: Knocked-down, i. e., unassembled, furniture constituting the necessary number of pieces to make the substantially complete article are not reported as parts. However, pieces insufficient to make a substantially complete article are not to be treated as the complete article but as parts of that article.

Plaintiff places great reliance on the case of F. W. Myers & Co., Inc. v. United States, 425 F.2d 781, 57 CCPA 87, C. A.D. 982 (1970). In the *F. W. Myers & Co.* case the Customs Court overruled appellant's protests against the classification and assessment of duty of merchandise, destined for ultimate use as a railroad tank car, at the rate of 18 percent ad valorem under item 690.15 of the TSUS. Appellant claimed that the merchandise was properly dutiable at 10 percent ad valorem as metal pressure containers designed and used for transport and storage of compressed gases under item 640.10. The Customs Court determined that the evidence clearly established that the imported merchandise was an unfinished railroad or railway rolling stock, and in view of General Interpretative Rule 10(h) was classifiable as railroad and railway rolling stock under item 690.15. In affirming the judgment of the Customs Court, the Court of Customs and Patent Appeals stated:

"Viewing the merchandise as imported, it is our opinion that it constituted rolling stock with the appearance and most of the apparatus of a completed railroad tank car, sufficiently advanced toward completion as a railroad tank car; that it was dedicated to that use and properly classified as an unfinished railroad tank car under

item 690.15 by virtue of Interpretative Rule 10(h) TSUS." 425 F.2d at 784, 57 CCPA at 91.

Judge Baldwin, writing for the appellate court, declared:

"* * * we are not persuaded that the Customs Court committed reversible error in holding that the imported merchandise is not a mere tank or container envisioned by item 640.-10, but has been so far advanced and dedicated as to bring it into the category of an unfinished railway tank car properly classifiable under item 690.15 TSUS."

Hence the court concluded:

"We think it indisputable that the merchandise, as imported, rolls into this country on railway tracks and, generally, on its own permanent railway wheels, having attached thereto considerable apparatus permanently installed for the sole purpose of rendering the importation a completed railway car."

The question presented in the F. W. Myers & Co. case was whether the importations were tank cars, as classified by the customs officials, or containers, as claimed by plaintiff. The Customs Court held, and the appellate court agreed, that the merchandise was clearly more than merely containers. Since it had been sufficiently advanced toward completion as a railroad tank car, by virtue of General Interpretative Rule 10(h) it had been properly classified as an unfinished railroad tank car. As between the two competing tariff provisions, it cannot be doubted that, based upon the factual findings, the merchandise was correctly classified.

In the F. W. Myers & Co. case the Customs Court had found that the "structural members" were "integral parts of a railroad tank car", and that those parts made the tank "something more than a container, for such parts would be superfluous as appendages to a 'container.'" 62 Cust.Ct. at 315. Moreover, as stated by the Court of Customs and Patent Appeals the importations

had the "appearance and most of the apparatus of a completed railroad tank car." 425 F.2d at 784, 57 CCPA at 91. The F. W. Myers & Co. case is therefore clearly distinguishable from the case at bar, for there, the customs officials, and the trial and appellate courts, all found that the merchandise in that case constituted a substantially complete tank car and not a mere container.

In its brief plaintiff has cited many cases for the proposition that an "unfinished article" should be classified under the eo nomine provision for the article. Of the cases cited only three dealt with furniture and whether the importations constituted parts.

In Necchi Sewing Machine Sales Corp. et al. v. United States, 30 Cust.Ct. 1, C. D. 1489 (1952), sewing machine cabinets which had been classified as manufactures of wood were held to be embraced within the common meaning of the word "furniture". Since the sewing machine cabinets were found to be "articles of convenience" as well as "articles of decoration", they were held classifiable under the tariff provision for "furniture". In dictum the court stated that "to be considered to be furniture an article need not necessarily be complete in itself", and suggested that the cabinets were "analogous to the familiar disappearing-well type of typewriter desks, which all would consider to be furniture, whether or not they had typewriters affixed to them." 30 Cust.Ct. at 4.

This dictum in the Necchi case, however, is inapplicable to the case at bar for the cabinets were in fact complete and finished articles, and were not merely pieces or portions of cabinets. Nothing more remained to be done in order to use them for the purpose for which they were intended, i. e., to contain a sewing machine. The same may be said of the typewriter desks mentioned by the court.

Judge Watson, writing for this court, discussed the Necchi case in Hurricane Import Co. et al. v. United States, 58 Cust.Ct. 541, 547, C.D. 3046 (1967), and

noted that "the sewing-machine cabinets functioned as cabinets and were, accordingly, usable as items of furniture." In the *Hurricane Import Co.* case the court held rattan side chair frames without seats to be "partly finished" furniture under a provision of the Tariff Act of 1930, as modified, which provided for "[f]urniture, wholly or partly finished, and parts thereof * * * ".

In the case of Abercrombie & Fitch Co. v. United States, 10 Cust.Ct. 382, Abstract 47958 (1943), merchandise invoiced as "2 steering wheel tables, 5′6″ (Wheel with base. No glass.)" was held dutiable by the customs officials at 40 percent ad valorem under paragraph 412 of the Tariff Act of 1930 which provided for "furniture, wholly or partly finished, and parts thereof * * * ". It was claimed to be dutiable at 25 percent ad valorem under the same paragraph as modified by the trade agreement with the United Kingdom which provided for "[f]urniture (other than chairs), wholly or partly finished * * * ". The case was submitted on a stipulation of counsel that the articles consisted of a hand gear ship's wheel mounted on a binnacle stand imported without the glass tops which would make them suitable as tables. The abstract opinion states that the court was satisfied that the articles were partly finished tables rather than parts of tables and therefore came within the provision of the trade agreement. The court was also satisfied that "the greater part by far of the table to be finished is incorporated in each of the imported articles, namely, the binnacle stand and the wheel, and the only part lacking is the glass top." *Ibid.* A similar case, also submitted on a stipulation of counsel, is Latama, Inc., et al. v. United States, 55 Cust.Ct. 432, Abstract 69554 (1965), which dealt with knives with folding blades.

In the case at bar, since the imported pieces, when assembled, would not constitute a substantially complete bunk bed, the cases cited do not support the plaintiff. In each of the cases that would appear to substantiate plaintiff's claim, the court found, either expressly or by necessary inference, that the articles were complete or substantially complete. Such a finding has not been made here by the customs officials, and this court, on the record presented, cannot say that they have erred.

That parts of an article, when assembled, must result in a substantially complete article, for their classification as the article itself, is in accord with existing judicial authority. For example, leather ball cases, imported without a rubber bladder, were not held to be balls, but merely parts of balls. Jack Schaefer, Inc. v. United States, 11 Cust. Ct. 78, C.D. 798 (1943). Another pertinent case is United States v. Outerbridge & Co., 7 Ct.Cust.Appls. 223, T.D. 36511 (1916), where certain unassembled parts of a marine engine were imported in one shipment. The question presented was whether the items, when assembled, constituted a complete marine engine. Since all of the necessary parts of a complete marine engine were included, the court held that a complete marine engine had been imported. This holding was predicated on the finding that certain missing items were "not substantial or even significant parts, if they were parts at all of the engine itself." Hence, the imported parts were not entitled to duty free entry, as materials necessary for the construction of naval vessels or their machinery, but were dutiable under the provision for steam engines.

The same reasoning was applied in the case of Johnson Iron Works (Ltd.) v. United States, 10 Ct.Cust.Appls. 268, T.D. 38623 (1921), which dealt with boilers. If the boilers were substantially complete they would have constituted dutiable merchandise. If they were only parts, which when assembled would not result in a substantially complete boiler, they would have been entitled to entry duty free. Since the court found that the importer succeeded in establishing that the importations did not constitute

complete boilers, they were deemed to be parts, and hence admitted duty free.

The point is illustrated clearly by a more recent decision of this court which dealt with "spring clothespins". In Twin Pin Co. of U.S.A., Inc. v. United States, 24 Cust.Ct. 430, Abstract 54254 (1950), the imported merchandise consisted of sets of wooden parts, three in each set, used in the manufacture, by a process of assembly in the United States, of a patented type of spring clothespin. In the completed clothespin a fourth part, a spring wire with multiple bends, was used. The wire was not included in the importation, but was of American manufacture. Plaintiff therein contended that the merchandise consisted of knocked-down clothespins requiring only assembly and classifiable as "spring clothespins". In its protest the plaintiff cited the case of Hawaii Seishu Kwaisha v. United States, 36 Treas.Dec. 575, T.D. 38065 (1919), which held that wooden staves, bottoms and tops of tubs, imported in knocked-down condition for convenience in transportation, were dutiable as entireties. Whether the imported parts were dutiable as entireties, of course, was not the issue in the spring clothespins case nor is it the issue in the present case dealing with the unassembled parts for bunk beds. Judge Mollison, in the *Twin Pin Co.* case, summarized the doctrine of entireties by saying that "[i]t is a familiar doctrine in customs law that parts of articles which are imported in an unassembled or knocked-down condition and which require only assembly to be made into complete articles are dutiable as entireties." 24 Cust.Ct. at 431. His final paragraph sets forth the holding of the spring clothespin case as follows:

"The parts of spring clothespins here involved, however, do not fall within that situation, for there is missing from the aggregate, as imported, a substantial and essential part of the completed clothespin, viz, the bent spring wire. Under the circumstances, the imported parts are merely parts of spring clothespins for which there is no more specific provision than that under which they were classified, i. e., manufactures of wood, not specially provided for." *Ibid.*

For the most recent expression of the Court of Customs and Patent Appeals on the doctrine of entireties, see United States v. Baldt Anchor, Chain & Forge Division of Boston Metals Co., etc., 459 F.2d 1403, 59 CCPA, C.A.D. 1051 (1972).

■ That parts of an article are classifiable as the article itself only if the article, as imported, is substantially complete, appears to be a reasonable application of General Interpretative Rule 10(h). Any other construction of Rule 10(h) would have the effect of repealing a specific provision which expressly provides for a different rate of duty for parts than the article itself. It is not the function of the court to question the legislative wisdom inherent in such legislation. Since the legislative intent is unmistakably expressed, it is entitled to judicial respect and must be given force and effect.

In the case at bar it is the determination of the court that the importations do not constitute a substantially complete article. Consequently, for tariff purposes, they are not unfinished furniture, but parts of furniture, and were therefore properly classified under item 727.40 of the Tariff Schedules of the United States.

Since plaintiff has not established that the merchandise has been incorrectly classified, and that the claimed classification is correct, the protests are overruled. Judgment will issue accordingly.